## BIDDLE, Warden, v. LUVISCH.

(Circuit Court of Appeals, Eighth Circuit. February 26, 1923.)

### No. 6125.

1. **Habeas corpus ⚖4—Writ cannot serve as writ of error.**

A writ of habeas corpus for release of a prisoner under sentence cannot serve as a writ of error and is a collateral attack on the judgment of conviction, and raises only the question of the jurisdiction of the court which imposed the sentence, or whether the indictment failed to charge an offense, and the judgment was therefore void.

2. **Counterfeiting ⚖16—Indictment for making plate for counterfeiting Canadian inland excise stamps held to charge an offense.**

Under Penal Code, § 161 (Comp. St. § 10331), making it an offense to cause to be made any plate in the likeness of a plate designated for the printing of the genuine issues of the obligations of any foreign government, an indictment charging that defendants caused to be made a plate in the likeness and similitude of certain plates designated by the government of the Dominion of Canada for the printing of genuine issues of certain obligations and securities of said government, "to-wit, certain inland excise stamps," described, *held* to charge an offense.

Lewis, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Habeas Corpus by Isadore Luvisch against W. I. Biddle, Warden of the United States penitentiary at Leavenworth, Kansas. Writ granted, and defendant appeals. Reversed.

Al. F. Williams, U. S. Atty., of Topeka, Kan. (W. W. Harvey, Asst. U. S. Atty., of Topeka, Kan., on the brief), for appellant.

L. S. Harvey, of Kansas City, Kan. (I. J. Ringolsky, M. L. Friedman, and William G. Boatright, all of Kansas City, Mo., on the brief), for appellee.

Before LEWIS, Circuit Judge, and TRIEBER and BOOTH, District Judges.

TRIEBER, District Judge. This is an appeal by the warden of the United States penitentiary at Leavenworth, Kan., from a judgment

---

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

discharging the appellee from confinement in the penitentiary on a writ of habeas corpus.

The only question involved is the sufficiency of the indictment containing three counts, charging a violation of section 161 of the Penal Code (Comp. St. § 10331), to which appellee had entered a plea of guilty, and upon that plea was sentenced to imprisonment for the term of five years. The counts only differ in that the first charges making of a plate, the second possession of a plate, both charging them to be in the likeness and similitude of certain plates designed by the Dominion of Canada, a foreign government, for the printing of the genuine issues of certain obligations and securities of said government. The third charges the sale of 1,200 counterfeit prints in the likeness and similitude of the genuine obligations and securities of that foreign government. The description of these securities and obligations of the Dominion of Canada is set out in each count, but need not be set out now, as the first count of the indictment will be inserted, which differs from the other counts only as stated. That count, omitting the jurisdictional allegations, charges that the defendants (there were four others indicted jointly with appellee)—

"did then and there unlawfully, willfully, feloniously, and knowingly, and without lawful authority, cause and procure to be made and engraved a certain zinc half tone plate in the likeness and similitude of certain plates and impressions designated by a certain foreign government, to wit, the Dominion of Canada, for the printing of the genuine issues of certain obligations and securities of the said foreign government, to wit, certain inland excise stamps of the denomination of one cent, bearing the following words and figures, to wit: The numerals '1912' at each end and in the center of said stamp, and the words 'Certified manufactured in the year,' and the signature of, to wit, 'J. W. Vincent,' and a large scroll numeral '1,' all on the left side of the center of said stamp, and in the center thereof the word 'Ottawa' above the numerals '1912,' and beneath said numerals the word 'Canada,' and on the right of the center of said stamp appears first the word 'cent' and then 'bottled in bond under excise supervision, Deputy Minr. Inland Revenue'—contrary to the form, force, and effect of the act of Congress in such case made and provided, and against the peace and dignity of the United States."

[1] As the writ of habeas corpus cannot serve as a writ of error for the correction of errors, but is a collateral attack on a judgment of a superior court, the only questions to be determined are the jurisdiction of the court, which imposed the sentence on the petitioner, or whether the allegations in the indictment fail to charge a violation of any penal law of the United States and therefore the judgment of conviction is wholly void. Ex parte Parks, 93 U. S. 18, 23 L. Ed. 787; Collins v. Johnston, 237 U. S. 502, 35 Sup. Ct. 649, 59 L. Ed. 1071; Collins v. Morgan, 243 Fed. 495, 156 C. C. A. 193, decided by this court; Bens v. United States, 266 Fed. 152 (2d C. C. A.), certiorari denied 254 U. S. 634, 41 Sup. Ct. 8, 65 L. Ed. 449. The jurisdiction of the court, which sentenced petitioner is not questioned.

[2] The question and only question left for consideration is whether the indictment charges a violation of section 161 of the Penal Code. If it does the judgment discharging the petitioner must be reversed, otherwise affirmed. The learned trial judge held that section 147, Penal Code (Comp. St. § 10317), defines "obligations and securities

of the United States" and section 220, Penal Code (Comp. St. § 10390), makes it an offense to counterfeit postage stamps of a foreign government and as the description in the indictment of the forged instruments shows that the counterfeit instruments were stamps, these sections control, and therefore none of the counts of the indictment charges a violation of any law of the United States. The indictment charges that the instruments are plates for counterfeit securities and obligations, and not postage stamps; therefore section 220 does not apply.

Section 147 does not attempt to define "securities or obligations" of a foreign government, but only "securities or obligations of the United States." This section is therefore inapplicable to the indictment in the instant case. The indictment in express language charges that the inland excise stamps described therein are "obligations and securities" of the Dominion of Canada. What the laws of Canada declare these inland excise stamps, which petitioner is charged with counterfeiting, we cannot judicially know, as the courts of the United States cannot take judicial notice of the laws of foreign nations, but they must be proved at the trial by competent evidence. Pierce v. Indseth, 106 U. S. 546, 551, 1 Sup. Ct. 418, 27 L. Ed. 254; Liverpool, etc., Co. v. Phenix Ins. Co., 129 U. S. 397, 445, 9 Sup. Ct. 469, 32 L. Ed. 788; Cuba R. Co. v. Crosby, 222 U. S. 473, 32 Sup. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40; The Hanna Nielsen, 273 Fed. 171 (2d C. C. A.); Yang-Tsze Ins. Ass'n v. Furness, 215 Fed. 859, 132 C. C. A. 201; Panama El. Ry. v. Moyers, 249 Fed. 19, 161 C. C. A. 79; Ufford v. Spaulding, 156 Mass. 65, 30 N. E. 360.

Had the petitioner not entered a plea of guilty, thereby admitting the truth of every material allegation in the indictment, including that alleging that these instruments are obligations and securities of the Dominion of Canada, it would have devolved upon the government to prove by competent evidence that the laws of the Dominion of Canada made these stamps "obligations or securities" of that government, and, if it failed to do so, petitioner would have been entitled to a directed verdict of not guilty. His plea of guilty relieved the government of the necessity of such proof, as he admitted them to be as charged. If the contention of appellee is correct, the government would have been denied the right to introduce evidence at the trial tending to show that the laws of the Dominion of Canada declared these stamps to be "obligations or securities" of its government, as charged in the indictment.

The court below erred in discharging the appellee on the writ, and its judgment is reversed.

LEWIS, Circuit Judge, dissents.

It is fundamental that the elements of a statutory crime must be found in the statute which defines and denounces it. The statute here under consideration, on which the indictment was drawn, being Section 161 of the Criminal Code, reads this way:

"Whoever * * * shall have control, custody, or possession of any plate * * * from which has been printed or may be printed any counterfeit note, bond, obligation or other security, in whole or in part, of any foreign government, bank or corporation,"

shall be guilty of a criminal offense. The same section also makes it a criminal offense to make or engrave such a plate designed for the printing of the genuine issues of the obligations of any foreign government, bank or corporation, or to print or in any manner make any print or impression "in the likeness of any genuine note, bond, obligation, or other security, or any part thereof, of any foreign government, bank, or corporation." The section is taken from the Act of May 16, 1884, and is now a part of Chapter 7 of the Criminal Code which deals with offenses against the currency, coinage, etc. It is preceded by other sections, some defining offenses for counterfeiting other named obligations or securities of foreign governments, and others dealing with the counterfeiting of like obligations or securities of the United States. The first section of the chapter defines obligation or security of the United States thus:

"The words 'obligation or other security of the United States' shall be held to mean all * * * stamps and other representatives of value, of whatever denomination, which have been or may be issued under any Act of Congress." Comp. St. § 10317.

This is equivalent to putting the word "stamps" into those sections defining the offense of counterfeiting obligation or other security of the United States. So far as we are advised, Congress has not declared it a crime to counterfeit or knowingly use counterfeited revenue stamps of any foreign government. The indictment against the three petitioners for the writ goes on the assumption that the Inland Excise Stamp of the Dominion of Canada is "an obligation or other security" of that country and charges that defendants counterfeited it; but the stamp is set out and it shows on its face that it is not an obligation or security. This seems too clear for argument, is not denied by appellant, is sustained by authorities cited in appellee's brief, and is impliedly if not expressly conceded by my associates. As I understand them, they in effect say that an inland excise stamp may have been made an obligation or other security of the Dominion by its laws, and if so, the prosecution would have been able to prove it on trial, and the plea of guilty admitted it. Granted all of this, I still dissent. For the proposition imports into the Congressional Act a foreign law (statutory or judicial decisions) as an element of the definition of the crime not found in the statute. We have, then, judgment and sentence of guilt of a statutory crime, the definition of which is found in part in the Congressional Act and in part in the laws of a foreign country. This seems to be demonstrated by other sections of chapter 7, to which attention has been called, in this way: Other sections make it an offense to counterfeit an obligation or security of the United States. But Congress knew, as I think all must know, that an excise stamp is not a note, bond, obligation or other security; hence, it appreciated the necessity of declaring that an "obligation or other security of the United States" means or includes stamps, in order to bring them within the definition of the crimes therein set out. Stamps, when issued under any Act of Congress, were thus made a subject-matter for counterfeiting, as much so as if they had been named in the sections defining the offenses. But the inclusion of stamps as an obligation or

other security confined them to domestic stamps. Not so with foreign stamps; they are not mentioned. They could have been expressly named in section 161 as a part of the definition of the crime, or it could have been declared by Congress that the words "obligation or other security of any foreign government" shall be held to mean all stamps which have been or may be issued under its authority. Nothing of the kind was done, either expressly or by necessary implication. A contrary implication that Congress did not intend to include foreign stamps in the crime defined by section 161 necessarily arises. The fallacy of resorting to the laws of a foreign country for the definition, in whole or in part, of a statutory crime seems to be obvious, and I do not agree that it may be done.

Of course, if the indictment on its face shows that no crime is charged, then the court was without power to impose punishment.