UNITED STATES v. ONE ZUMSTEIN BRIEFMARKEN KATALOG 1938.

No. 6.

District Court, E. D. Pennsylvania.
Sept. 2, 1938.

Francis W. Sullivan, Asst. U. S. Atty., of Philadelphia, Pa., and J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., for libellant.

Milford Bendiner, of Philadelphia, Pa., for intervening claimant.

MARIS, Circuit Judge.

On September 11, 1937 the Collector of Customs at Philadelphia seized and the United States by the libel now before me seeks the forfeiture of a book described as a Zumstein Postage Stamp Catalogue, 1938 Edition, lately imported from Switzerland into this country through the mails. The seizure was based upon the Government's contention that its importation was unlawful because it contained illustrations of foreign postage and revenue stamps reproduced in violation of the law. The importer has intervened in the proceeding, contending that the stamp illustrations contained in the book are entirely lawful, and he claims possession of it.

An examination of the seized book discloses that it is the 21st annual edition of a catalogue of the postage stamps of European countries published by Zumstein & Cie, of Bern, Switzerland. It is written in German, and appears to list and

describe the postage stamps issued by each of the countries of Europe. It contains a vast amount of information with regard to these stamps and was evidently published for philatelic purposes, that is, for the use of those persons, of whom there are a vast number in this country as well as in the countries of Europe, who pursue as a hobby the collection and study of stamps and of the dealers who supply their wants. Upon the cover of the book is an illustration of a Swiss postage stamp printed in green and throughout its pages appear illustrations in black and white of the various types of European stamps described therein. Among these illustrations are those of a number of stamps of Great Britain and its European colonies which indicate on their face that they are available for "Postage and Revenue." No illustrations of any stamps of the United States appear in the book.

■■ I do not understand that it is contended by the Government that the illustrations of stamps contained in the book are forged or counterfeit stamps. Certainly in order to constitute it a forgery or a counterfeit an illustration of a stamp must have been made in imitation of the original with a view to deceive. Here there is no suggestion of an intent to deceive, the stamp illustrations contained in the book being obviously designed to assist in the identification and study of genuine stamps and not to serve as substitutes for them. Consequently it must be held that Section 220 of the Criminal Code, 18 U.S.C. § 349, 18 U.S.C.A. § 349, which prohibits the forging or counterfeiting of postage or revenue stamps of any foreign government or knowingly uttering or using any such forged or counterfeit stamps, can have no application to the illustrations contained in the seized book. The same must be said of Section 172 of the Criminal Code, 18 U.S.C. § 286, 18 U.S.C.A. § 286, which directs that all counterfeits of any obligation or other security of any foreign government shall be forfeited to the United States, even if it should be held that the stamps illustrated were obligations or securities of foreign governments, a point to be discussed later.

The only other penal statute to which I have been referred as bearing on the question before me is Section 161 of the Criminal Code, 18 U.S.C. § 275, 18 U.S.C.A. § 275. So far as pertinent it provides that "Whoever * * * shall make or engrave, or cause or procure to be made or engraved, or shall assist in making or engraving, any plate, stone, or other thing in the likeness or similitude of any plate, stone, or other thing designated for the printing of the genuine issues of the obligations of any foreign government, bank, or corporation; or whoever shall print, photograph, or in any other manner make, execute, or sell, or cause to be printed, photographed, made, executed, or sold, or shall aid in printing, photographing, making, executing, or selling, any engraving, photograph, print, or impression in the likeness of any genuine note, bond, obligation, or other security, or any part thereof, of any foreign government, bank, or corporation; or whoever shall bring into the United States or any place subject to the jurisdiction thereof any counterfeit plate, stone, or other thing, or engraving, photograph, print, or other impressions of the notes, bonds, obligations, or other securities of any foreign government, bank, or corporation, shall be fined not more than $5,000, or imprisoned not more than five years, or both."

Does this section render unlawful the making, selling or importing of the stamp illustrations appearing in the seized book? If it does, the importation of the book was unlawful and it is subject to seizure and forfeiture under Section 593(b) of the Tariff Act of 1930, 19 U.S.C. § 1593(b), 19 U.S.C.A. § 1593(b), unless the illustrations were excepted from the provisions of Section 161 by the Act of March 3, 1923, 42 Stat. 1437, 18 U.S.C. § 350, 18 U.S.C.A. § 350, or its amending Act of January 27, 1938, 52 Stat. 6, 18 U.S.C.A. § 350, both of which acts will be discussed later. If, on the other hand, Section 161 does not render these illustrations unlawful it must be concluded that they are entirely lawful since my researches have failed to disclose any other statute which would prohibit them. The Government points out, however, that Section 161 makes it unlawful to make, sell or import prints or impressions in the likeness of obligations or other securities of a foreign government, and it seized the book because it contended that the stamps illustrated therein were obligations or other securities of the governments which issued them. The claimant, on the other hand, contends that the stamps illustrated are in fact neither obligations nor securities. Thus arises the fundamental question in the case.

■ To determine this question it becomes necessary to consider the meaning of the words "obligation" and "security" as used in Section 161. Since, as we shall see, the Criminal Code does not define them, they must be given their ordinary and usual meaning. De Ganay v. Lederer, 250 U.S. 376, 39 S.Ct. 524, 63 L.Ed. 1042. In Webster's New International Dictionary, Second Edition, "obligation" is defined as "a formal and binding agreement or acknowledgment of a liability to pay a certain sum or do a certain thing." "Security" is defined in the same work as "an evidence of debt or of property, as a bond, stock certificate, or other instrument, etc.; a document giving the holder the right to demand and receive property not in his possession." When used, as they are in Section 161, in the clause—"note, bond, obligation, or other security,"—it becomes clear that the obligations referred to are such only as may be described as securities, and that the securities mentioned are restricted to those of the same general nature as notes, bonds and obligations under the doctrine of ejusdem generis, which is particularly applicable to penal statutes. First Nat. Bank of Anamoose v. United States, 8 Cir., 206 F. 374, 46 L.R.A.,N.S., 1139. It is thus seen that the underlying thought in each case is that of a written instrument evidencing an indebtedness on the part of the issuing government. Stamps, however, are mere evidences of prepayment of money by the holders to the government. In the case of postage stamps they evidence the prepayment of the charges imposed by the government for carrying matter through the mails, while in the case of revenue stamps they indicate the prepayment of certain taxes levied by the government. Certain it is that neither one of them evidences a debt due by the issuing government to the holder. The conclusion is inescapable that postage and revenue stamps are not in fact obligations or securities as those words are used in Section 161. This conclusion is fully supported by the opinions both of the majority of the Circuit Court of Appeals for the Eighth Circuit and of the dissenting judge in the case of Biddle v. Luvisch, 287 F. 699.

As the court in the case just cited pointed out the fact that Section 147 of the Criminal Code, 18 U.S.C. § 261, 18 U. S.C.A. § 261, in defining the words "obligation or other security of the United States" specifically includes "stamps and other representatives of value, of whatever denomination, which have been or may be issued under any Act of Congress" cannot affect this conclusion since that section does not attempt to define obligations or other securities of foreign governments and is, therefore, inapplicable to those words as used in Section 161. Furthermore the fact that the Congress found it necessary to include stamps in the statutory definition of "obligation or other security of the United States" would indicate that the ordinary meaning of the terms did not include them. As Circuit Judge Lewis said in his dissenting opinion in Biddle v. Luvisch, supra (at pages 702, 703): "But Congress knew, as I think all must know, that an excise stamp is not a note, bond, obligation or other security; hence, it appreciated the necessity of declaring that an 'obligation or other security of the United States' means or includes stamps, in order to bring them within the definition of the crimes therein set out. Stamps, when issued under any Act of Congress, were thus made a subject-matter for counterfeiting, as much so as if they had been named in the sections defining the offenses. But the inclusion of stamps as an obligation or other security confined them to domestic stamps. Not so with foreign stamps; they are not mentioned. They could have been expressly named in section 161 as a part of the definition of the crime, or it could have been declared by Congress that the words 'obligation or other security of any foreign government' shall be held to mean all stamps which have been or may be issued under its authority. Nothing of the kind was done, either expressly or by necessary implication. A contrary implication that Congress did not intend to include foreign stamps in the crime defined by section 161 necessarily arises."

■ It need only be added that when the Congress desired to prohibit the forging or counterfeiting of a postage stamp or revenue stamp of any foreign government it used those precise words and not the words "obligation" or "security" in the penal statute, Section 220 of the Criminal Code. This is additional evidence that the Congress did not intend by the latter words in Section 161 to include stamps. My conclusion finds further support in the well settled rule that the language of a penal statute must be strictly construed. Prussian v. United States, 282 U.S. 675, 51 S. Ct. 223, 75 L.Ed. 610.

It remains for us to consider the provisions of the Act of March 3, 1923, 42 Stat. 1437, 18 U.S.C. § 350, 18 U.S.C.A. § 350, as well as those of Section 2 of the Act of January 27, 1938, 52 Stat. 6, 18 U.S.C.A. § 350, which amended it. The material portions of the Act of 1923 are as follows: "That nothing in sections 161, 172, and 220 of the Act entitled 'An Act to codify, revise, and amend the penal laws of the United States,' approved March 4, 1909 (Thirty-fifth Statutes at Large, at pages 1118, 1121, and 1132), shall be construed to forbid or prevent the printing or publishing of illustrations in black and white of foreign postage or revenue stamps from plates so defaced as to indicate that the illustrations are not adapted or intended for use as stamps, or to prevent or forbid the making of necessary plates therefor for use in philatelic or historical articles, books, journals, or albums, or the circulars of legitimate publishers or dealers in such stamps, books, journals, or albums."

■ It will at once be observed that this act was not penal in its nature. It made nothing a crime which was not a crime under the other provisions of the law to which it referred, and which I have already discussed. On the contrary it is obvious that its purpose was purely remedial. It was intended to make certain that the printing and publishing for philatelic purposes of black and white illustrations of foreign postage and revenue stamps made from defaced plates should not be deemed to be prohibited by Sections 161, 172 and 220 of the Criminal Code. While it was in force when the book before us was seized it is clear that it can have no bearing on the question whether the illustrations in that book were lawful since none of them was printed from defaced plates.

After the seizure was made in this case the Act of 1923 was amended by Section 2 of the Act of January 27, 1938, 52 Stat. 6, 18 U.S.C.A. § 350, so as to read, so far as here material, as follows:

"(a) Nothing in sections 161, 172, and 220 of the Criminal Code [sections 275, 286, and 349 of this title], as amended, or in any other provision of law, shall be construed to forbid or prevent the printing, publishing, or importation, or the making or importation of the necessary plates for such printing or publishing, for philatelic purposes in articles, books, journals, newspapers, or albums (including the cir-culars or advertising literature of legitimate dealers in stamps or publishers of or dealers in philatelic or historical articles, books, journals, or albums), of black and white illustrations of—

"(1) foreign revenue stamps if from plates so defaced as to indicate that the illustrations are not adapted or intended for use as stamps;

"(2) foreign postage stamps."

It is clear that this statute, which I will call the amended Act of 1923, was no more penal in character than the original act. It did not create a new crime or broaden the definition of an existing one. On the contrary its obvious purpose and effect was merely to widen the exemption from all possible illegality which had been introduced by the original Act of 1923 so as to include therein illustrations of foreign postage stamps even though made from undefaced plates and so as to include the importation of the illustrations referred to in the act as well as their manufacture. Consequently the amended Act of 1923 did not operate to make the illustration of foreign revenue and postage stamps for philatelic purposes a violation of Sections 161, 172 and 220 of the Criminal Code, 18 U.S.C.A. §§ 275, 286, 349, unless they came within the prohibitions of those sections prior to its passage. However, as I have already pointed out, sections 172 and 220 relate only to forgeries and counterfeits intended to pass as substitutes for genuine issues and, therefore, cannot apply to illustrations made solely for philatelic purposes and not intended to deceive, while Section 161 relates only to obligations and securities of foreign governments and, therefore, cannot apply to postage or revenue stamps. As I have said, there seems to be no other penal law on the subject. It, therefore, appears that the amended Act of 1923, so far as it relates to foreign postage and revenue stamps, does not actually have any legal effect since the illustration of those stamps which it purports to legalize was not unlawful before its passage.

■ The Government now concedes that in view of the amended Act of 1923 the black and white illustrations of foreign postage stamps in the seized book are entirely lawful even if they are government obligations or securities. There are, however, two other classes of illustrations in the book. There is but one example of the first of these. It appears on the cover

of the book and is an illustration in green instead of black and white of a postage stamp issued by the government of Switzerland. The second group comprises illustrations in black and white from undefaced plates of stamps of Great Britain and her European colonies which are available for revenue as well as postage. These are unquestionably postage stamps and, therefore, their illustration in black and white from undefaced plates would seem to be within the express exemption of the amended Act of 1923. They are, however, undoubtedly revenue stamps as well. If they are to be treated as revenue stamps the illustrations of them do not come within that exemption because they are not printed from defaced plates. Similarly the illustration of the Swiss postage stamp does not come within it because it is printed in a color other than black and white. However, as we have seen, these stamp illustrations are not forgeries or counterfeits nor are they copies of government obligations or securities. There is, therefore, no provision of the law which prohibits their manufacture or importation for philatelic purposes even though they do not come within the purported exemption from illegality contained in the amended Act of 1923. They are, therefore, just as lawful as the black and white illustrations of foreign postage stamps which the government concedes, in view of the express exemption of the amended Act of 1923, must be considered entirely lawful. It follows that none of the stamp illustrations in the seized book violated any law of the United States. I, therefore, conclude that the Zumstein Postage Stamp Catalogue which is the subject of the present libel was not imported unlawfully and is not subject to seizure and forfeiture under Section 593 (b) of the Tariff Act of 1930, 19 U.S.C. § 1593(b), 19 U.S.C.A. § 1593(b), or any other provision of the law.

In reaching the conclusion to which I have come I have not overlooked the opinion of the majority of the court in Biddle v. Luvisch, supra. That case involved a prosecution under Section 161 of the Criminal Code for selling counterfeit Canadian revenue stamps. These stamps were averred in the indictment to be obligations or securities of the Canadian government. The defendants pleaded guilty and afterward sought to be released on habeas corpus on the ground that no crime was charged in the indictment. The majority of the court held that, while revenue stamps were not included in the ordinary meaning of the words "obligations or other securities" appearing in Section 161, the section was nevertheless applicable to such stamps if it should be made to appear that the laws of the government which issued them declared them to be obligations or securities of that government. Since they had been averred in the indictment to be such, the court felt that the defendants by pleading guilty had admitted that the Government might prove that they had been declared to be such by the laws of Canada, although, in view of the plea, no such evidence was offered. It was held, in other words, that the Congress in defining the crime in the statute as involving obligations and other securities of foreign governments intended to import into the statutory definition those foreign laws which declared stamps or other instruments to be obligations or securities even though they were not in fact obligations or securities as those words are understood in this country.

With this interpretation of the statute I cannot agree. On the contrary I find myself in full accord with the dissenting opinion of Judge Lewis which seems to me founded upon better reason. In discussing this point he said (at pages 702, 703): "The indictment against the three petitioners for the writ goes on the assumption that the Inland Excise Stamp of the Dominion of Canada is 'an obligation or other security' of that country and charges that defendants counterfeited it; but the stamp is set out and it shows on its face that it is not an obligation or security. This seems too clear for argument, is not denied by appellant, is sustained by authorities cited in appellee's brief, and is impliedly if not expressly conceded by my associates. As I understand them, they in effect say that an inland excise stamp may have been made an obligation or other security of the Dominion by its laws, and if so, the prosecution would have been able to prove it on trial, and the plea of guilty admitted it. Granted all of this, I still dissent. For the proposition imports into the Congressional Act a foreign law (statutory or judicial decisions) as an element of the definition of the crime not found in the statute. We have, then, judgment and sentence of guilt of a statutory crime, the definition of which is found in part in the Congressional Act and in part in the laws of a foreign country. * * * The fal-

522

lacy of resorting to the laws of a foreign country for the definition, in whole or in part, of a statutory crime seems to be obvious, and I do not agree that it may be done."

■■■ The construction of the statute adopted by the majority in Biddle v. Luvisch, supra, seems to me clearly to violate the rule that a penal statute must be strictly construed and if it creates a new crime must clearly state the acts denounced. United States v. Ninety-Nine Diamonds, 8 Cir., 139 F. 961, 2 L.R.A.,N.S., 185; Todd v. United States, 158 U.S. 278, 15 S.Ct. 889, 39 L.Ed. 982; United States v. Wiltberger, 18 U.S. 76, 5 Wheat. 76, 5 L.Ed. 37. Furthermore it runs directly counter to the rule that, although a person is presumed to know the laws of the country in which he resides, there is no presumption that he knows the law of a foreign state or country. Finch v. Mansfield, 97 Mass. 89; Stedman v. Davis, 93 N.Y. 32. This becomes clear when we recall that under the view taken by the majority in Biddle v. Luvisch, supra, an individual, in order to determine whether his action in illustrating a foreign government issue is criminal, must look not only to the law of his own country but also to the law of the foreign country involved, even though the court itself is not required to take judicial notice of the latter and it may be in a foreign language, the meaning of which is totally unknown to him. Under this view questions of interpretation would inevitably arise. There would of course be no difficulty in the case of English speaking peoples and not much in the case of those who speak the Romance languages, since both the words "obligation" and "security" are directly derived from Latin. But imagine the difficulty and doubt which would arise in deciding whether given words in the statutes of China, Japan, or Siam, of Nepal, Tibet or Afghanistan, of Persia, Iraq or Turkey or even of Russia, Hungary or Finland are the equivalent of the words "obligation" or "security" in English. Yet each of the countries mentioned issues postage stamps.

For the reasons which I have stated I believe that the opinion announced by a divided court in Biddle v. Luvisch, supra, places an erroneous construction upon Section 161 of the Criminal Code. Clearly it is not controlling authority in the Third Circuit and I find myself unable to follow its reasoning. Furthermore I do not think that the doctrine of stare decisis may be invoked to perpetuate this clearly erroneous construction of the statute by a divided court. In addition it should be pointed out that in the case now before me there has been no averment by the Government that the laws of Switzerland declare its postage stamps to be obligations or securities of the government or that the laws of Great Britain make a similar declaration with regard to its revenue stamps or those of its European colonies. Nor was any effort made to prove these facts although I granted the Government a continuance of the hearing to permit the production of evidence on those specific points. The Government's failure to offer evidence on these points must be construed to be an admission either that no such Swiss or British Statutes exist or that the construction placed upon Section 161 of the Criminal Code by the majority in Biddle v. Luvisch, supra, was erroneous. Upon either view that ruling is not in conflict with my conclusion in this case.

Finally I think it should be noted that my construction of Section 161 does not give countenance to the forging or counterfeiting of foreign stamps since, as we have seen, another section of the Criminal Code, Section 220, 18 U.S.C. § 349, 18 U.S.C.A. § 349, expressly makes such conduct criminal. That section, as originally enacted, provided that "Whoever shall forge, or counterfeit, or knowingly utter or use any forged or counterfeited postage stamp of any foreign government, shall be fined not more than $500, or imprisoned not more than five years, or both." The section was amended by the Act of May 26, 1926, 44 Stat. 653, 18 U.S.C.A. § 349, to include revenue stamps of foreign governments as well. The latter act, which was passed after the decision in Biddle v. Luvisch, supra, is further evidence, if any were needed, that the Congress did not intend to include either postage or revenue stamps in the language used in Section 161.

A decree may be entered dismissing the libel and directing the return of the seized book to the claimant.