**UNITED STATES of America,**
Plaintiff,

v.

**Merle Wilbur FORDYCE, Defendant.**

Cr. No. 29124.

United States District Court
S. D. California,
Central Division.

March 29, 1961.

Laughlin E. Waters, U. S. Atty., by Minoru Inadomi, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Russell E. Parsons, Los Angeles, Cal., for defendant.

YANKWICH, District Judge (after stating the facts above).

Stated, in summary, my view is, under the admitted facts, that no offense was committed by the defendant, because neither the credit cards nor the charge slips, nor the two in combination, are "securities" within the meaning of the section referred to. Nor are they "instrumentalities" for forging or altering of a type which the statute condemns. The section under which this prosecution is instituted, § 2314 of Title 18 U.S.C.A., must be read in conjunction with § 2311 of the same title, which defines "securities". This is a part of the "Stolen Property Act", in which the codifiers of the Criminal Code of 1948 tried to assemble, in the same place, many of the offenses against property that were scattered through the codes. Hence, § 2314 is a part of Chapter 113 relating to "stolen property", and § 2311 defines various words "as used in this chapter". The phrase "this chapter" includes § 2311 to § 2317 of the same title.

It is a principle of statutory construction that when the Congress does not define an ordinary term, the presumption is that the word is used in the ordinary dictionary sense. National Labor Relations Board v. Coca-Cola Co., 1956, 350 U.S. 264, 268–269, 76 S.Ct. 383, 100 L.Ed. 285. When, however, the Congress defines the terms, in a statute, the presumption is that nothing that is not conceivably covered by the specific definitions is included. See Yates v. United States, 1957, 354 U.S. 298, 304–313, 77 S.Ct. 1064, 1 L.Ed. 2d 1356. Rightly. For otherwise the Congress would not have enumerated the various matters included. In the matter before us, the Congress named every possible instrument that in the commercial world is called a "security". They then added this clause:

" * * * or, in general, any instrument commonly known as a 'security' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, warrant, or right to subscribe to or purchase any of the foregoing."

Webster's Unabridged Dictionary gives as Definition 3 of "security",

"Something given, deposed, or pledged, to make secure, or certain, the fulfillment of an obligation, the payment of a debt, etc.; property given or serving to render secure the enjoyment or enforcement of a right; surety; pledge; as, the security is poor. b One who becomes surety for another, or engages himself for the performance of another's obligation; a surety."

In other words, what we have here is the common acceptation of the word, that is, something which is a promise to pay, like a check, promissory note, or the like.

Definition 4, as given in Webster's Unabridged Dictionary, is

"An evidence of debt or of property, as a bond, stock certificate, or other instrument, etc.; a document giving the holder *the right to demand and receive property not in his possession.* Securities are: Personal, giving a claim against a particular person; * * * " (p. 2263)

A credit card is nothing more than a means of identification which tells the merchant that the holder is entitled to charge merchandise and will pay for it *when a bill is presented,* usually at the end of the month. If the holder does not pay when a bill is presented and suit ensues, sued for non-payment, the action would have to be as for a debt, on an

open book account. So when the Congress used the word "security" it meant what we commonly call a "security", a pledge, a promise, like a promissory note, or the like.

The Supreme Court has told us that the object of this statute is to prevent fraud, but the Court has not re-defined "securities". United States v. Sheridan, 1946, 329 U.S. 379, 382–384, 67 S. Ct. 332, 91 L.Ed. 359; Pereira v. United States, 1954, 347 U.S. 1, 9–10, 74 S.Ct. 358, 98 L.Ed. 435. So we are back to the definition in the statute.

A case from the Second Circuit is very persuasive in delimiting the scope of "security" in the section before us. In United States v. Brown, 2 Cir., 1957, 246 F.2d 541, a person executed certain drafts, payable to the defendant, which could not be cashed, except upon proof that the merchandise in payment for which they were given had actually been delivered. The merchandise was not delivered. The defendant forged all the supporting documents, including the bill of lading, and the certificate of insurance on the shipment. These he took to a Mexican bank, which cashed the drafts. The bank then sent the documents to the New York bank only to find that, while the money had been obtained by means of this genuine instrument, the supporting documents showing delivery of the merchandise had been falsified fraudulently. The defendant was found guilty. The Appellate Court reversed, saying:

"The phrase 'falsely made' as used in the statute relates to the execution of what is defined in Section 2311 of the same title to be a security rather than to whether its content be true or false. * * * As was said in Pines v. United States, 8 Cir., 123 F.2d 825, 828, 'To "falsely make" is a crime not of changing or forming an instrument to resemble an existing genuine instrument or to represent that it is the act of a genuine and existing obligor, but rather to make an instrument which has no original as such and no genuine make whose

work is copied, although in form it may resemble a type of recognized security.' Manifestly, none of the drafts, taken by themselves, were falsely made within the meaning of the statute since they were just what they did on their face appear to be, genuine drafts executed by the actual drawer, the appellant. Nor were the insurance certificates issued by an insurance company falsely made for they were genuine certificates of the company, though the shipments of ore they purported to cover were, indeed, non-existent and of course they were misleading and fraudulent for that reason but, since they were not falsely made, no question as to whether they were themselves 'securities' within the meaning of the statute need be answered. * *

"The theory on which the case was submitted to the jury and on which the government now seeks to have the judgment upheld is that, as the drafts were payable only when they were accompanied by the supporting documents in compliance with the terms of the letter of credit, the forged assayer's certificates, and the copies of the forged bills of lading which were sent from Mexico City to New York with the drafts were so related to them that the drafts were falsely made within the meaning of the statute.

"We cannot agree. It is true, as the government points out, that these drafts were not payable except when the conditions upon payment contained in the letter of credit were fulfilled. * * * But it does not follow that, because under contract law a draft may be dishonored without liability when presented for payment, unless specified documents are attached, the documents which are essential to make the draft collectible according to the terms of a letter of credit under which it is drawn are incorporated into it by reference and become a part of the

draft itself. *Though they serve to fulfill a condition precedent to the enforcement of payment, they add nothing needed to make the draft complete by itself as a security within the statutory definition."* at pages 542–543 (Emphasis added)

To the argument that "all" the instruments considered together were a security, that they constituted a fraudulent "package" and, therefore, some of the items in it being forged, the statute applied, the Court gave this answer:

"The appellant was shown to have obtained payment on the draft fraudulently by using false, and falsely made, documents and apparently the United States mails were used in sending the fraudulent 'packages,' as the government calls them, to New York. Very likely what he did was punishable under our laws relating to the use of the mails to defraud and that what he did in Mexico was in violation of Mexican law but nothing in this record gives adequate support for his conviction on this indictment." at page 543

The judgment was not only reversed but the indictment was ordered dismissed.

This case is the most analogous in its facts to the case before us. It teaches that you cannot turn a false document—such as a charge slip with a false signature—into a "security", because it is not a "security". It is merely a signed voucher, acknowledging receipt, on purchase, of merchandise. Neither is a credit card a "security". Nor are the two, in combination, charged in the indictment as a "security", or are, in fact, such. For none is a "written instrument evidencing an indebtedness". United States v. One Zumstein Briefmarken Katalog, D.C.Pa.1938, 24 F. Supp. 516, 518–519, per Albert B. Maris, Circuit Judge.[1] And none gives the holder the right to "demand and receive property not in his possession", as Webster says. Indeed, general all-purpose credit cards, honored by many tradesmen, instead of one firm only, were hardly known at the time the statute was re-enacted in 1948.

It should be added that neither the credit card nor the charge slip, nor the credit card and the charge slip, in combination, constitute a

"tool, implement, or thing used or fitted to be used in falsely making, forging, altering, * * * any

---

1. This case is very persuasive. Section 350 of Title 18 U.S.C.A., as it stood then, made it unlawful to make, sell or import prints or impressions in the likeness of obligations "or other securities" of the government which issued them. The Government seized a foreign stamp catalogue, contending that the stamps illustrated therein "were obligations or securities" within the statute. Judge Maris, sitting in the District Court, rejected the contentions. After giving Webster's definition of "security", reproduced by us in the text, he wrote:

"When used, as they are in Section 161, in the clause—'note, bond, obligation, or other security,'—it becomes clear that the obligations referred to are such only as may be described as securities, and that the securities mentioned are restricted to those of the same general nature as notes, bonds and obligations under the doctrine of ejusdem generis, which is particularly applicable to penal statutes. First Nat. Bank of Anamoose v. United States, 8 Cir., 206

F. 374, 46 L.R.A.,N.S., 1139. It is thus seen that the underlying thought in each case is that of a written instrument evidencing an indebtedness on the part of the issuing government. Stamps, however, are mere evidences of prepayment of money by the holders to the government. In the case of postage stamps they evidence the prepayment of the charges imposed by the government for carrying matter through the mails, while in the case of revenue stamps they indicate the prepayment of certain taxes levied by the government." United States v. One Zumstein Briefmarken Katalog, supra, 24 F.Supp. at page 519. There is greater reason for a similar conclusion here. For postage stamps evidencing prepayment of charges and revenue stamps evidencing prepayment of taxes can be circulated freely and can be used by anyone in whose possession they come for the purposes intended. Charge slips, on the contrary, are only evidence that certain merchandise was charged to the holder of the credit card.

security, or any part thereof." 18 U.S.C.A. § 2314.

This portion of the statute plainly relates to "instrumentalities", i. e., tools, dies and other like "objects" for forging and altering securities. The credit cards are not such. And the statute does not relate to the act of a "person" in fraudulently affixing to a charge slip a name not his own, upon false identification by a credit card not his own.

Just as the counterfeit statute punishes as distinct offenses the making of a mold for counterfeiting coins and the possession of such mold (18 U.S.C.A. § 487; Power v. Squier, 9 Cir., 1942, 130 F.2d 868), the section before us (18 USCA, § 2314) punishes the transportation of forged securities as well as the transportation of "objects", i. e., "any tool, implement or thing" for forging such securities. But for either offense to be committed "securities" must be involved. We have none here.

I find the defendant not guilty.