UNITED STATES of America, Plaintiff,

v.

Robert Austin YOUNG and Raymond Theodore Johnson, Defendants.

No. 21390.

United States District Court
W. D. Missouri, W. D.

Nov. 14, 1962.

F. Russell Millin, U. S. Dist. Atty., William A. Kitchen, Assistant U. S. Dist. Atty., Kansas City, Mo., for plaintiff.

Robert G. Duncan, Kansas City, Mo., for defendant Young.

Richard B. Curtis, Kansas City, Mo., for defendant Johnson.

JOHN W. OLIVER, District Judge.

This case pends upon a motion to dismiss Counts II and III of an amended information charging violations of Section 2314, Title 18 United States Code. Count I, involving both defendants and charging the alleged unlawful transportation of a stolen motor vehicle in violation of Section 2312, Title 18 United States Code, is not attacked.

Count II, involving only defendant Young, as it was originally filed, merely paraphrased Section 2314 and proceeded upon the factual assumption that a Mobil Oil Company credit card was a "security" within the meaning of that statute and Section 2311 of Title 18 United

States Code.[1] The same thing is true in regard to Count III, involving only defendant Johnson, except that the "security" allegedly involved was a "credit sales slip" on an Esso credit card.[2]

Defendants' original suggestions in support of their respective motions to dismiss Counts II and III relied upon Judge Ridge's decision in United States v. Jones, (W.D.Mo.1960) 182 F.Supp. 146, and Judge Yankwich's decision in United States v. Fordyce, (S.D.Cal.1961), 192 F.Supp. 93.

■ The Government concedes that those cases are against it but suggests that "Jones and Fordyce were rendered in 1960 and 1961, respectively" and that they should not be followed in 1962 because "the weight of opinion has now shifted to the view that credit cards and credit sales slips are included in the provisions of Section 2314". The Government relies on Williams v. United States, (S.D.Cal.1961) 192 F.Supp. 97,[3] United States v. Rhea, (W.D.Ark.1961) 199 F. Supp. 301, and Lewis v. United States, (10th Cir., 1962) 301 F.2d 787. And

finally the Government suggests that "apparently the shift of opinions toward the view that credit cards and credit sales slips come within Sections 2314 and 2311 is based upon the changing commercial practices of the country. Credit cards more and more are being used in lieu of cash or checks to make purchases".

The latter argument need not be noticed in detail because it is properly addressed to the legislative branch of the Government. Our problem is not what Congress should have done. It is what Congress did do.

We agree with that portion of the majority opinion in Lewis which suggests that the cited cases "may be susceptible of some nice factual distinctions".[4] We therefore requested the Government to file an amended information which would set forth additional factual information and in which it would allege exactly how credit cards operate and the function served by a credit card sales slip in that operation. The Government has done so. In addition, the parties have stipulated that the Govern-

1. Original Count II was as follows:
"That on or about August 23, 1962, in the Western Division of the Western District of Missouri, Robert Austin Young did knowingly, wilfully, unlawfully, feloniously, and with unlawful and fraudulent intent, transport from Los Angeles, California, to Kansas City, Missouri, a tool, implement or thing used or fitted to be used in falsely making, altering or counterfeiting a security, to wit, credit card number 860–962–979–8, issued to Paul Breitling by the Mobil Oil Company, all in violation of Section 2314, Title 18, United States Code."

2. Original Count III was as follows:
"That on or about August 22, 1962, in the Western Division of the Western District of Missouri, Raymond Theodore Johnson knowingly, wilfully, unlawfully, feloniously, and with unlawful and fraudulent intent, did transport and cause to be transported from Kansas City, Missouri, to New York, New York, a falsely made and forged security, to wit, a credit sales slip in the amount of $2.30 on Esso Credit Card 310 416 965 5, in the name of George O. Becker, which credit sales slip was issued by Leonard W. Hanson

Standard Oil Station, Kansas City, Missouri, and the said Raymond Theodore Johnson knew the same to have been falsely made and forged, all in violation of Section 2314, Title 18, United States Code."

3. Williams was decided March 16, 1961. Fordyce was decided March 29, 1961. It is therefore apparent that Fordyce, contrary to the Government's assertion, is a more recent case. But, of course, this fact is meaningless because one does not follow nor does he refuse to follow a particular case merely because it happens to be the most recently decided case.

4. We do not consider Lewis analogous to this case because it involved a collateral attack on a sentence under Section 2255, Title 28 United States Code. That case did not purport to rule the question here presented. In fact, it made clear that it was ruling the "narrow question" presented by the Section 2255 motion. Much the same thing must and is said about Ingling v. United States, (9th Cir., 1962) 303 F.2d 302, another appeal from a Section 2255 motion, which recently followed Lewis.

ment's factual allegations are true and correct and that the original motions to dismiss be directed to the amended counts in the information.[5]

■ We are convinced that what Judge Ridge and Judge Yankwich said in Jones and Fordyce, respectively, is a correct statement of the law. We are further convinced that the facts as stated in the amended counts of the information underline the necessity of holding that credit cards and credit card sales slips can not fairly be determined to be securities within the meaning of Sections 2311 and 2314, Title 18 United States Code. Defendants' motions will therefore be sustained.

We add only to what was said in Jones and Fordyce that a basic principle of statutory construction is involved in the Government's effort to stretch the language of the statute.[6] Yates v. United States, 354 U.S. 298, 304, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), relied upon the "principles stated by Chief Justice Marshall more than a century ago in United States v. Wiltberger, 5 Wheat. 76, 95–96, 5 L.Ed. 37".

■ What Marshall said in that ancient case is applicable to this case. He held that:

"The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment. * * * The case must be a strong one indeed, which would justify a

Court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated. If this principle has ever been recognized in expounding criminal law, it has been in cases of considerable irritation, which it would be unsafe to consider as precedents forming a general rule for other cases."

The principles announced in Wiltberger have been consistently applied by the Court of Appeals for the Eighth Circuit. We particularly like the language of Judge Walter Sanborn in Northern Pacific Ry. Co. v. United States, (8th Cir., 1914) 213 F. 162, 168, wherein he held that "the natural and apparent meaning of the terms of a statute should always be preferred to any recondite signification discovered only by study, ingenuity, and strong desire." For other Eighth Circuit cases, see First National Bank of Anamoose v. United States, (8th Cir., 1913) 206 F. 374; Speeter v. United States, (8th Cir., 1930) 42 F.2d 937, 941; and Arnold v. United States, (8th Cir., 1940) 115 F.2d 523, 526. We are bound by those cases and we follow them.

For the reasons stated the respective defendants' motions to dismiss Counts II and III of the amended information should be and are hereby sustained.

It is so ordered.

---

5. Amended Counts II and III are set forth in the appendix attached hereto.

6. If we considered the question of law in this case a close one, which we do not, we would have discussed, rather than merely cite in this footnote, the not dissimilar cases involving alleged "securi-

ties" involved in United States v. One Zumstein Briefmarker Katalog 1938, (E.D.Pa.1938) 24 F.Supp. 516, (involving copies of postage stamps) and United States v. Brown, (2nd Cir., 1957) 246 F.2d 541, (involving Mexican certificates).

## APPENDIX

## "COUNT II

"That on or about August 22, 1962, in the Western Division of the Western District of Missouri, Robert Austin Young did knowingly, wilfully, unlawfully, feloniously, and with unlawful and fraudulent intent, transport from Los Angeles, California, to Kansas City, Missouri, a tool, implement, or thing used or fitted to be used in falsely making, altering, or counterfeiting a security, to wit, credit card number 860–962–979–8, issued to Paul Breitling by the Mobil Oil Company, said Mobil Oil credit card being fitted to be used in falsely making a security in the following manner: The credit card could be taken to any Mobil Oil service station in Kansas City, Missouri, and there used to effect the purchase of goods and services by having an imprint from the credit card placed on a credit sales slip and the signature of the person to whom the credit card was issued forged on the credit sales slip by the person in possession of the card. Thereupon, the credit sales slip would be retained by the service station operator and a copy given to the person using the credit card. The service station operator then would deliver the credit sales slip to the Mobil Oil tank truck driver for cash credit on gasoline and supplies delivered. Thereupon, the credit sales slip would be delivered to the Mobil Oil Company credit card accounting office in Kansas City, Missouri, where it would be mailed to the Mobil Oil accounting center at Los Angeles, California, the office which issued the credit card to Paul Breitling. The credit sales slip then would be sent for payment to Paul Breitling, to whom the credit card was issued, all in violation of Section 2314, Title 18, United States Code."

## "COUNT III

"That on or about August 22, 1962, in the Western Division of the Western District of Missouri, Raymond Theodore Johnson knowingly, wilfully, unlawfully, feloniously, and with unlawful and fraudulent intent, did transport and cause to be transported from Kansas City, Missouri, to New York, New York, a falsely made and forged security, to wit, a credit sales slip in the amount of $2.30, on Esso credit card number 310 416 965 5, in the name of George O. Becker, which credit sales slip was issued by Leonard W. Hanson Standard Oil Station, Kansas City, Missouri, in exchange for goods and services delivered to the said Raymond Theodore Johnson. Said credit card was issued to George O. Becker and was used to imprint his name on the credit sales slip and the signature of George O. Becker was forged on the credit sales slip by Raymond Theodore Johnson. Thereupon, the credit sales slip was given by the service station operator to the Standard Oil Company tank truck driver in exchange for supplies received. The tank truck driver in turn sent the credit sales slip to the Standard Oil Company billing office in Chicago, Illinois. Their bookkeeping entries were made and the credit sales slip was sent to the Esso Company in New York, New York for billing to George O. Becker in New York, and the said Raymond Theodore Johnson knew the credit sales slip to have been falsely made and forged, all in violation of Section 2314, Title 18, United States Code."