**UNITED STATES of America**

v.

**Richard Neal MALONE.**

**Crim. No. 63-H-195.**

United States District Court
S. D. Texas,
Houston Division.

June 19, 1964.

Woodrow Seals, U. S. Atty., and Thomas L. Morrill, Asst. U. S. Atty., Houston, Tex., for the Government.

Eastup & Kroll, Gordon J. Kroll, Houston, Tex., for defendant.

NOEL, District Judge.

Defendant is charged in a four-count indictment with the illegal transporta-

tion in interstate commerce of falsely made, forged and counterfeited securities in violation of 18 U.S.C.A. § 2314.[1] The "securities" are three oil company credit card retail invoices and one oil company credit card original invoice.[2]

It was stipulated that the defendant, to obtain certain items, presented to various service stations a Humble Oil & Refining Company credit card issued to one Don D. Johnson, and in connection therewith, signed the respective invoices listed in the indictment with either the name, Don Johnson, or Don D. Johnson, without the approval of Don D. Johnson. The defendant, however, asserts that these invoices do not constitute "securities" within the meaning of 18 U.S.C.A. § 2314 and has filed a motion to dismiss.

Section 2314 is part of the National Stolen Property Act, as amended, 18 U.S.C.A. §§ 2311–2317. Section 2311 defines the various words used in the Act. Although defining "securities" to include many other instruments, Section 2311 does not specifically include "credit card involves," or any similar item. It does, however, include "any * * * evidence of indebtedness" within the definition. The disposition of the motion to dismiss therefore depends upon whether the oil company credit card invoices fraudulently signed by the defendant can be considered evidences of indebtedness.

Two circuit court cases[3] have held that circumstances may exist under which an oil company charge voucher or invoice may be an "evidence of indebtedness" within the meaning of Section 2311. However, they involved a collateral attack, pursuant to 28 U.S.C.A. § 2255, upon a judgment and sentence under Section 2314; therefore, the only question for decision before them was whether such an invoice is always incapable of being an evidence of indebtedness, regardless of the form in which it is cast.[4]

It therefore becomes important to examine the particular invoice. Consequently, this Court has called for, received and studied the credit card and the invoices involved here, as well as a stip-

1. 18 U.S.C.A. § 2314 reads in pertinent parts as follows:

   "Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered or counterfeited;

   *    *    *    *    *

   "Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

2. Count 1 charges the illegal transportation of a Standard Oil Company of California Credit Card Retail Invoice dated February 2, 1963, in the amount of $22.-96 and bearing the signature of "Don Johnson."

   Count 2 charges the illegal transportation of a Standard Oil Company of California Credit Card Retail Invoice dated December 17, 1962, in the amount of $43.83 and bearing the signature, "Don D. Johnson."

   Count 3 charges the illegal transportation of a Humble Oil & Refining Company Credit Card Retail Invoice dated October 11, 1962, in the amount of $22.75 and bearing the signature, "Don Johnson."

   Count 4 charges the illegal transportation of a Standard Oil Company of California Credit Card Original Invoice dated January 12, 1963, in the amount of $18.90 and bearing the signature, "Don D. Johnson."

3. Ingling v. United States, 303 F.2d 302 (9th Cir. 1962); Lewis v. United States, 301 F.2d 787 (10th Cir. 1962).

4. It was said in Ingling at pages 303–304, of 303 F.2d:

   "Hence, if it can reasonably be said that under certain circumstances the charge invoice was an evidence of indebtedness, then the indictment charged a public offense. It may be that the charge invoice was stamped with an endorsement that all the conditions of the credit card were incorporated therein; or that within the terms of the charge invoice there is stated a credit arrangement and terms; or that the invoice contains therein an underlying credit agreement, expressly or impliedly; or that by the treatment accorded it by the parties, the invoice became an 'evidence of indebtedness' in some commercial sense."

ulation concerning the manner in which the credit card system operates.

Although there is a split of authority among the district courts as to whether invoices are evidences of indebtedness under the particular circumstances presented,[5] the only circuit court case, Barack v. United States, 317 F.2d 619 (9th Cir. 1963), has held that Hilton Carte Blanche charge vouchers did not constitute evidences of indebtedness.

■ I adopt as the standard for determining whether the invoices here are evidences of indebtedness the definition of that term set forth by Judge Ridge in United States v. Jones, 182 F.Supp. 146, 149 (W.D.Mo.1960) and adopted by the Barack case, which is

"* * * [T]he term 'evidence of indebtedness' has reference to some individual printed or written instrument for the transfer or payment of money, that contains on its face evidence of an obligation as to which some innocent person would act in relation to the terms thereof, that such document should be something other than mere evidence of a notation of general liability for goods, wares, or merchandise fraudulently purchased."

The invoices involved in this case are all essentially in the same form. They contain blank spaces on which has been imprinted by the use of a card machine the credit card number, customer's name, date of card expiration, dealer's name and address, and date of sale. The dealer has filled in, by hand, the description of the merchandise sold, the price

charged therefor, and the license number of the car used by the purchaser. The space for the customer's signature has been filled by the defendant with either the name "Don Johnson" or "Don D. Johnson."

■ These vouchers are not evidences of indebtedness as envisioned by the standard established by Judge Ridge. They contain nothing that would indicate that they were intended as commercial instruments which, as pieces of paper, have value to the holder, giving assurance to him that the papers' very existence indicates that the debts there evidenced continue to exist. They are merely signed vouchers, acknowledging receipt, on purchase, of merchandise.

United States v. Crouch, 224 F.Supp. 969 (D.Del.1964), held that since each of the other items specifically defined as "securities" by Section 2311 consists of a single document which in itself is sufficient to establish an obligation to pay a sum of money to an obligee, then for an item to be encompassed within the "evidence of indebtedness" definition of securities, it must also by itself be sufficient to establish such an obligation without consideration of the custom and usage surrounding its employment.

Therefore, since the vouchers in question here are nothing more than receipts for the purchase of merchandise, and not evidences of indebtedness, the indictment does not charge the defendant with an offense under 18 U.S.C.A. § 2314, and defendant's motion to dismiss is granted. Accordingly, the said indictment charging the defendant is hereby dismissed.

---

5. Cases holding that such invoices are not evidences of indebtedness are: United States v. Crouch, 224 F.Supp. 969 (D. Del.1963); United States v. Young, 210 F.Supp. 640 (W.D.Mo.1962); United States v. Fordyce, 192 F.Supp. 93 (S.D. Calif.1961); and United States v. Jones, 182 F.Supp. 146 (W.D.Mo.1960).

Cases holding that such invoices are evidences of indebtedness are: United States v. Rhea, 199 F.Supp. 301 (W.D. Ark.1961); and Williams v. United States, 192 F.Supp. 97 (S.D.Calif.1961). United States v. Mingo, 217 F.Supp. 729 (M.D.Fla.1963), recognized that ordinarily an invoice is not an evidence of indebtedness, but held that one bearing the legend "Payable upon receipt of monthly statement" would be.