### BIRTCH et al. v. HUNTER, Warden.
### No. 3341.

Circuit Court of Appeals, Tenth Circuit.

Nov. 13, 1946.

§ 415, and the second a conspiracy to violate such Act, 18 U.S.C.A. § 418a.

The substantive case came on for trial before a jury with appellants being represented by counsel of their own choice. At the conclusion of the Government's evidence a motion for a directed verdict was interposed and overruled. Whereupon appellants withdrew their pleas of not guilty and entered pleas of guilty to the substantive case, and the next morning entered pleas of guilty in the conspiracy case. Each appellant was sentenced to ten years for the substantive offense and ten years on the conspiracy charge, to run concurrently.

By habeas corpus proceedings appellants now challenge the validity of the convictions and sentences, urging as grounds for their release that (1) the indictment does not charge a criminal offense under Section 415; (2) the evidence offered by the Government did not prove the offense charged, and (3) they were deceived, misled and coerced by statements of the District Attorney and the presiding judge into withdrawing their pleas of not guilty and entering pleas of guilty.

The National Stolen Property Act, 18 U.S.C.A. § 415, under which appellants were indicted, provides " * * * whoever with unlawful or fraudulent intent shall transport, or cause to be transported in interstate or foreign commerce, any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered, or counterfeited * * * shall be punished by a fine of not more than $10,000 or by imprisonment for not more than ten years, or both. * * *" 18 U.S.C.A. § 414(b) defines securities as "any * * * evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, * * *; or, in general, any instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, warrant, or right to subscribe to or purchase any of the foregoing, or any forged, counterfeited, or spurious representation of any of the foregoing."

J. Raymond Gordon, of Charleston, W. Va., for appellants.

Eugene W. Davis, Asst. U. S. Atty., of Topeka, Kan. (Randolph Carpenter, U. S. Atty., of Topeka, Kan., on the brief), for appellee.

Before PHILLIPS and MURRAH, Circuit Judges, and CHANDLER, District Judge.

MURRAH, Circuit Judge.

This is an appeal from an order denying discharge in a habeas corpus proceedings.

On January 6, 1943, two indictments were returned in the United States District Court for the Northern District of West Virginia, against the appellants, James Chester Birtch and William Arthur Denham, and others as co-defendants. The first indictment charged violations of the National Stolen Property Act, 18 U.S.C.A.

The indictment charged that the appellants "did unlawfully, wilfully, knowingly, feloniously and fraudulently and with unlawful and fraudulent intent, transport and caused to be transported in interstate commerce * * * a falsely made, forged and counterfeited security, knowing the same to have been falsely made and counterfeited, to-wit: a certain profit sharing agreement known as 'Statement of Account'". The "Statement of Account" is set out haec verba in the indictment and purports to be a statement of account to A. Norman Breghton and L. B. Hathaway on a wager of $45,200.00, with "odds 1½ to 1" and winnings in the amount of $113,000.00. It shows a profit of $67,800.00 and states that when payment is made all of the "named clients shall be present in person and shall not be paid to any one or more, but only to all". Under "remarks" it is provided that "no more cash wagers can be made by the above named clients until this transaction is taken up".

The indictment reads upon the language of the statute and the "Statement of Account" shows upon its face that it is a "profit-sharing agreement" in a gambling enterprise and, therefore, a security within the meaning of the statute. On habeas corpus the question is not whether the indictment is vulnerable to attack by motion or demurrer, but whether it is so fatally defective as to deprive the court of jurisdiction. Rosenbloom v. Hunter, 10 Cir., 143 F.2d 673; Creech v. Hudspeth, 10 Cir., 112 F.2d 603; Hastings v. Hudspeth, 10 Cir., 126 F.2d 194; Knight v. Hudspeth, 10 Cir., 112 F.2d 137. The offense charged is one proscribed by the statute, the court had jurisdiction of such offense and the person of the appellants, the sentence imposed was authorized by the statute, and appellants cannot therefore complain here.

Appellants contend that the interstate transportation of the security was never proven by the Government, and therefore the trial court should have sustained the motion for a directed verdict. But, questions concerning the sufficiency or admissibility of the evidence to sustain the allegations in the indictment are not open to collateral attack in habeas corpus proceedings. McMicking v. Schields, 238 U.S. 99, 35 S.Ct. 665, 59 L.Ed. 1220; Baker v. Hudspeth, 10 Cir., 129 F.2d 779; Moore v. Aderhold, 10 Cir., 108 F.2d 729; Garrison v. Hudspeth, 10 Cir., 108 F.2d 733; Casebeer v. Hudspeth, 10 Cir., 114 F.2d 789, certiorari denied 316 U.S. 683, 62 S.Ct. 1272, 86 L.Ed. 1755; Voorheis v. Hunter, 10 Cir., 150 F.2d 53. This is a defect which can only be reached by timely appeal. Casebeer v. Hudspeth, supra; Hudspeth v. McDonald, 10 Cir., 120 F.2d 962; Huntley v. Schilder, 10 Cir., 125 F.2d 250. Furthermore, the appellants stand convicted on pleas of guilty, which necessarily admit the allegations in the indictment. The judgment is not based upon the weight or sufficiency of the evidence.

A transcript of the proceedings in the trial of the substantive offense discloses the following facts. After the motion for a directed verdict was overruled counsel for appellants stated in open court "Your honor please, certainly up until today I was convinced that there would be no evidence upon which this indictment could at all be sustained. Under the circumstances, as it has developed today, Mr. Moody and myself advised the defendants—I would like the privilege of withdrawing the plea heretofore entered of not guilty, and the defendants will each now, on the indictment pending before this court, enter a plea of guilty". After requesting each defendant to approach the bench, the court stated "I want to say to you now their punishment will be much less by pleading guilty than it would be if they were found guilty". He then asked each defendant individually if it was his desire to withdraw the plea of not guilty and enter a plea of guilty, and each defendant answered in the affirmative. The next day when pleas of guilty were entered in the conspiracy case the court further stated "Gentlemen, I repeat what I said to you last night—there will be no further penalty than would have been pronounced on the one case in these two cases. I always give people credit for telling the truth to the court. I am not in a position yet to pronounce the sentence that I will later." Appellant Birch then stated to the court "May I take this occasion to

thank his honor for the impartial and fair way the trial was conducted? I think I am talking on behalf of my co-defendants. Thank you very much". Appellant Benham also thanked the court.

Just before the proceedings were closed, counsel for appellants stated "If these men are entitled to any credit * * * I would like them to have it. Your honor knows, as does the District Attorney, that before this case started I had announced privately to you and to the District Attorney that, as a lawyer of this bar, I could not permit these men knowing what I did of them, to enter a plea of guilty to the indictment that has been on trial for the last three days, * * * so I am alone responsible for the three days' trial in this court. I felt that the Government never would be able to prove transportation * * * and I was here solely to take advantage of that fact if it didn't develop. But it developed, and when it did develop, I talked to these men and they readily assented to changing their plea. * * *".

Thus, it is abundantly clear from the record that the first statement made by the trial court to the effect that punishment would be mitigated by reason of pleas of guilty, was after counsel had informed the court that the defendants desired to change their pleas. There is nothing in the record to indicate or from which it can be legitimately inferred that the appellants or either of them were deceived by any statements on the part of the court, the district attorney, their own counsel, or any one else, or that they were induced to enter pleas of guilty by a promise of leniency. The decision to enter the pleas of guilty and the announcement in open court was made before the court spoke on the question of punishment. Moreover, appellants were charged by two indictments. The offense charged in each indictment was punishable by ten years and ten thousand dollars fine. The court could have therefore imposed a total sentence of twenty years and a twenty thousand dollar fine. When on the next day the appellants entered a plea of guilty to the conspiracy charged the trial court remarked that there would be no further penalty than would have been pronounced in one case, and the sentences ultimately pronounced were in accordance with his comments.

The trial court's finding that appellants were not deceived, misled and coerced into entering pleas of guilty, but on the contrary entered such pleas in the complete and full exercise of their own free will with full knowledge and understanding of what they were doing, is amply supported by the evidence, and his judgment should be, and is affirmed.