**UNITED STATES of America,**
**Plaintiff,**

v.

**Robert Lester JONES and Mary Jane**
**Jones, Defendants.**

**No. 20593.**

United States District Court
W. D. Missouri, W. D.

March 21, 1960.

Edward L. Scheufler, U. S. Atty., O. J. Taylor, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Roger J. Barbieri, Kansas City, Mo. (court-appointed), for defendants.

RIDGE, Chief Judge.

In this criminal action the Government seeks to bring certain "credit sales slips" within the ambit of Section 2314, Title 18 U.S.C.A. by claiming the same to be a "security" within the definition of that term as found in Section 2311, Title 18 U.S.C.A.

The information in this case contains four counts. Counts I and II charge the defendant Robert Lester Jones with knowingly transporting and causing "to be transported in interstate commerce * * * a certain falsely made and forged security, to-wit, Montgomery

Ward credit sales slip Number 1205–32, in the amount of $33.90, bearing the falsely made and forged signature of Jim B. Loftus * * * well knowing the same to have been falsely made and forged * * *." Counts III and IV present similar charges against the defendant Mary Jane Jones. The parties have formally waived trial by Jury and agreed that the issues shall be determined by the Court on the basis of the following stipulation of facts:

"1. That the defendants, Robert Lester Jones and Mary Jane Jones, are husband and wife;

"2. That commencing September 10, 1959, the defendant Mary Jane Jones was employed as a clerk in the Central Credit Department of Montgomery Ward, 6200 St. John Avenue, Kansas City, Missouri;

"3. That Montgomery Ward follows the practice of issuing 'credit cards' to customers whose credit ratings meet the requirements of that company; a customer making application for such a credit card executes an agreement which provides that said customer will pay for any merchandise purchased on credit from the company.

"A customer to whom such card has been issued may, in purchasing merchandise from Montgomery Ward, present such card to the sales clerk for use in preparation of a 'credit sales slip.' Such credit card bears the name and address of the customer; sales personnel of Montgomery Ward are authorized to honor such credit card and to sell merchandise on credit to the holder of such card without further investigation or approval of the customer's credit rating with the company.

"4. It was a part of the duties of the defendant, Mary Jane Jones, as an employee of Montgomery Ward to receive credit cards which were returned by the Post Office Department as undelivered and to place same in proper office channels for correction or other processing; in her capacity as an employee of Montgomery Ward, the defendant, Mary Jane Jones, came into possession of two Montgomery Ward credit cards returned by the Post Office Department; the first card was obtained by her on or about October 1, 1959, and was issued to Jim B. Loftus, 9236 Noland Road, Lenexa, Kansas; the second such card was obtained on or about October 15, 1959, and was issued in the name of Jeffie Suttles, 3011 North 6th Street, Kansas City, Kansas.

"5. After misappropriating said credit cards, the defendant, Mary Jane Jones, took them to her home and showed them to her husband, the defendant Robert Lester Jones, and informed him of the manner in which she obtained said cards. Thereafter, the two defendants, by use of these credit cards, made purchases of merchandise totaling in excess of $1500 at Montgomery Ward stores in the states of Kansas and Missouri. At the time of each such purchase the sales clerk prepared a credit slip, using the credit cards presented by the defendants, and after preparation of such credit sales slips, one of the defendants forged on such credit sales slip the signature appearing on the credit card then being used.

"6. On or about October 24, 1959, the defendant, Robert Lester Jones, forged the signature of Jim B. Loftus on Montgomery Ward credit sales slips numbers 1205–32 and 3476–41, in the amounts of $33.90 and $33.88, respectively; such purchases and forgeries occurred at the Montgomery Ward store located in Kansas City, Kansas.

"7. On or about October 24, 1959, the defendant Mary Jane Jones forged the signature of Mrs. Jeffie Suttles on Montgomery Ward credit sales slips numbers 1489–49 and 3481–31, in the amounts of $26.86

and $15.83, respectively; such purchases and forgeries occurred at the Montgomery Ward store located in Kansas City, Kansas.

"8. Following the forgery of the credit sales slips in Kansas City, Kansas, the said credit slips were transported by Montgomery Ward employees from Kansas City, Kansas, to the Montgomery Ward main store, 6200 St. John Avenue, Kansas City, Missouri, for entry upon the customers' accounts and for billing of said purchases to said customers. As an employee of Montgomery Ward, the defendant Mary Jane Jones was fully aware of the fact that such sales slips had to be so transported from Kansas to Missouri. The defendant Robert L. Jones, although not having been advised of the fact that credit slips were necessarily returned to Missouri, was aware of the fact that the main store of Montgomery Ward, in the Kansas City area, was located in Kansas City, Missouri.

"9. The credit sales slips mentioned above, bearing numbers 1205–32, 3476–41, 1489–49 and 3481–31, are attached hereto as Government's exhibits 1, 2, 3 and 4; it is stipulated by the parties that such exhibits are admitted in evidence without objection on part of defendants except that defendants object to their admission on the ground that exhibits 1, 2, 3 and 4 do not constitute 'securities' within the meaning of 18 U.S.C. 2311 and 2314."

In light of the above agreed statement of facts; and the charges alleged in the several counts of the information, it is conceded that the only issue here for determination, to establish the guilt or innocence of the defendants, is the question of whether or not the "credit sales slips" described in each count of the information constitute a "security" within the meaning of the above statutes. In light of the ruling hereinafter made, that limitation of issue by the parties may be accepted, although there may also

be an issue respecting "interstate commerce" which we do not reach, before guilt could be pronounced under the facts stipulated.

The "credit sales slip" which the Government contends is a "security" as defined in Section 2311, supra, may be described as follows: It has the name "Montgomery Ward" printed at the top, with a sales slip number directly opposite thereto. In a space designated "Charge to" appears the imprint of a credit charge-plate issued by Montgomery Ward in the name of one "Jim B. Loftus, 9236 Noland Rd., Lena, Kansas," bearing number "0331–801T." Thereafter, there is described on the slip a sale of merchandise that carried a specific article number and unit price, which, together with added sales tax and a "time price," reveals a total sale of $33.90. In the center of such document appears the printed notation, "customer's signature" and opposite thereto appears, in writing, the name "Jim B. Loftus." Such is the form of document alleged in each count of the information and established by the evidence which the defendants are charged with transporting in interstate commerce; and which the Government asserts is an "evidence of indebtedness" defined as a "security" by Section 2311, supra.

Because the type of document or instrument here involved is quite common to the present-day system of merchandising; because the theft and unauthorized use of credit cards has become quite common and has resulted in considerable losses to the companies issuing such cards; and, the apprehension of the persons illegally using such credit cards is difficult, due to the delay in processing "credit sales slips" unauthorizedly executed, the Government contends that "credit sales slips" fraudulently made and executed as above, and thereafter transported in interstate commerce, by any means, should be considered as within the above sections of the Stolen Property Act, supra. Desirable as it may be to free interstate commerce from pollution by all fraudulent securities, we do

not believe that these "credit sales slips" can be considered to be a security falling within the ambit of the above sections of the Stolen Property Act (Chap. 113, T. 18 U.S.C.A.) for the following reasons.

There is no question about the "credit sales slips" here considered being spurious, i. e. falsely made and containing a forged signature. We accept, in the instant case, without making a specific determination in respect thereto, the interstate transportation of such slips as noted in the agreed statement of facts, namely, that they were transported by a Montgomery Ward employee, from Kansas City, Kansas to Kansas City, Missouri, in the due course of that company's business, for bookkeeping purposes, as being sufficient evidence to establish the necessary interstate transportation to bring the crime here charged within the statute, supra. This for the reason that when the legal character of the instant "credit sales slips" is clearly established, we do not consider the same as being a "security" in the form of an "evidence of indebtedness," within the contemplation of the Stolen Property Act, supra.

Concededly, Section 2311, supra, defines the term "security" most broadly. As there defined, and so far as here pertinent, we think the term "evidence of indebtedness" has reference to some individual printed or written instrument for the transfer or payment of money, that contains on its face evidence of an obligation as to which some innocent person would act in relation to the terms thereof, that such document should be something other than mere evidence of a notation of general liability for goods, wares, or merchandise fraudulently purchased. Without expatiating at length on that matter, we think it sufficient to here note that the "credit sale slip" which is the gravamen of each charge made against these defendants is nothing more than "evidence of a sale" of merchandise. On their face, they contain no evidence of the time, mode or medium for any payment to be made for the merchandise, sale of which is thereon noted. To make such sales slip evidence of a general liability on the part of anyone, to pay any money or thing of value for the goods therein described, reference must be had to some other factual item than that contained on the "credit sale slip" itself.

It is the Government theory that the "credit cards" Mary Jane Jones purloined from Montgomery Ward after the same were returned by the Post Office Department as being undelivered, were used by defendants to "make purchases of merchandise" described on the "credit sales slips." It is here stipulated that "at the time of each such purchase the sales clerk prepared a credit slip, using the credit cards presented by the defendants, and after the preparation of such credit sales slip, one of the defendants forged on such credit sales slip the signature appearing on the credit card then being used." Stip. of Facts, supra. Hence, the conclusion is, that at most the "credit cards" here referred to, when used, were the means of identification which caused the innocent person to act, and the "credit sales slips," when made, were merely a notation or record of a sale made in reliance on the credit card.

It is further stipulated herein that the "customer making application for such credit card executes an agreement which provides that said customer will pay for any merchandise purchased on credit from" Montgomery Ward by use of the credit card. Stip., par. 3. That being so, then the legal effect of an unauthorized use of such a credit card for identification purposes; and the false making of a "credit sales slip," is not "evidence of indebtedness" to Montgomery Ward or anyone else for any debt due, but is in legal effect the perpetration of a personal fraud against the person to whom the credit card is issued. Cf. Magnolia Petroleum Co. v. McMillan, Tex.Civ.App.1943, 168 S.W.2d 881; Jones Store Co. v. Kelly, 1931, 225 Mo.App. 833, 36 S.W.2d 681. In that aspect, any indebtedness as to which these "credit sales slips" may be related can only be to some contract between Montgomery Ward and the customer in

whose name the "credit card" is issued, and the "credit sales slips" are not "evidence of indebtedness" themselves. Cf. Lit Bros. v. Haines, 1923, 98 N.J.Law 658, 121 A. 131. The above-mentioned contract which is the *sine qua non* of the "evidence of indebtedness" in this case was not transported in interstate commerce as a "security" or definable as such in Section 2311, supra.

The gist of the offenses here charged is the transportation of the described spurious "credit sales slips" in interstate commerce. The *corpus delicti* of such offense includes not only the body or substance of the offense, but also the criminal means by which it was committed, which in this case depends on the nature of the instrument transported in interstate commerce. It is, therefore, of vital importance to here establish that the instrument transported or caused to be transported in interstate commerce is a "security" within the meaning of Section 2311, supra. No authority is cited by the parties, and independent research has failed to disclose any document held to be a "security" within the ambit of 2311, supra, which has not in some general or specific manner called for the payment, delivery or promise to pay or deliver money or property to the holder thereof, and as to which some innocent person would be tempted to act thereon in its falsely made or forged character. Cf. Pines v. United States, 8 Cir., 1941, 123 F.2d 825; Birtch v. Hunter, 10 Cir., 1946, 158 F.2d 134. In that respect the "security" would have to be something more than a mere notation of some general liability of the person whose name appeared thereon. We do not believe that any innocent person would accept or receive the "credit sales slips" here considered as having any evidence of value by way of indebtedness or otherwise, after the same were falsely made and forged. In fact, Montgomery Ward did not accept such documents from that aspect. It accepted and depended on such "credit sales slips" after they were made, for bookkeeping purposes, but not as "evidence of indebtedness." It was the

"credit cards" that defendants exhibited to clerks of Montgomery Ward, and its underlying credit agreement with the person identifiable by such credit cards, that caused Montgomery Ward to part with its merchandise, upon presentation thereof. Under the facts here, Montgomery Ward parted with its merchandise under false pretenses, but not in reliance upon the "credit sales slips" here sought to be made a security. A scheme to defraud is not within the federal offenses defined in Section 2314, supra, without use of a security defined in Section 2311, supra, and the transportation of the security in interstate commerce.

A verdict of "not guilty" is now entered herein in respect to each defendant on each charge contained in the instant information. It is so ordered.