Joseph William WILLIAMS, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 57/61.

United States District Court
S. D. California,
Central Division.

March 16, 1961.

Caryl Warner and Russell E. Parsons, Los Angeles, Cal., for petitioner.

Laughlin E. Waters, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Division, Wm. Bryan Osborne, Asst. U. S. Atty., Asst. Chief, Criminal Division, Los Angeles, Cal., for respondent.

WESTOVER, District Judge.

In May, 1959, an Indictment in five counts was filed in this court against the above-named Joseph William Williams (No. 27,639–CD), charging interstate transportation of forged securities in vio-

lation of Title 18 U.S.C. § 2314. Count 4 of the Indictment is in the following language:

"On or about July 16, 1958, defendant Joseph William Williams, with unlawful and fraudulent intent, caused to be transported a security, to wit, charge slip NO. E 7990 of Standard Oil Company of California, dated July 16, 1958, in the amount of $91.55, bearing the signature, Gerald Cohen, in interstate commerce from Vancouver, Washington to Los Angeles County, California, in the Central Division of the Southern District of California, which security was falsely made and forged as the defendant then and there well knew."

On May 18, 1959 defendant appeared in court for arraignment and plea, at which time the Court ordered the cause continued to May 25, 1959, having appointed Caryl Warner, Esquire, to represent defendant.

On May 25, 1959, defendant and his counsel appeared in court, and defendant entered a plea of "not guilty" to Counts 1, 2, 3 and 5 and a plea of "guilty" as to Count 4 of the Indictment. Thereafter, on June 12, 1959 defendant was sentenced to the custody of the Attorney General for a period of six years for the offense charged in Count 4. The remaining counts of the Indictment were dismissed.

On July 5, 1959 defendant filed a letter with the court, requesting modification of sentence. The letter was processed as a petition for modification of sentence and, on July 23, 1959, was denied.

On August 16, 1959 defendant filed another letter which was treated as a petition or motion for modification of sentence. On September 15, 1959 the modification request was denied.

On January 13, 1961 defendant filed another letter with the court, citing the decision of the Honorable Leon R. Yankwich of this court in the case of United States of America v. Fordyce, 192 F.Supp. 93, in which Judge Yankwich held that a credit card and charge slips were not "securities" within the meaning of Title 18 U.S.C. § 2314. Petitioner in his letter contends that he, too, had been indicted and sentenced on a "charge slip" offense and as "Judge Leon R. Yankwich, * * *, ruled by dismissal, that Interstate Transportation of a stolen implement used for forgery, namely, a credit card, was not a violation of a Federal Law and that their is no such law on the statute books" petitioner was sentenced illegally.

In the Fordyce case, upon which petitioner relies, Judge Yankwich held that a Diners Club Credit Card and charge slips emanating from the use thereof and a Hilton Carte Blanche Credit Card were not securities within the meaning of § 2314.

Upon receipt of defendant's letter the Court ordered it filed as a petition under Title 28 U.S.C. § 2255 and appointed Russell E. Parsons, Esquire, as counsel in the case to be associated with Caryl Warner, Esquire, appointed at the inception of the Indictment proceedings. On February 9, 1961, counsel filed a formal Motion to Vacate Judgment of Conviction under § 2255.

This question (whether a credit card and charge slips resulting from the use thereof constitute "securities" within the meaning of § 2314) is an important one. During the past decade the credit card business has increased tremendously. Practically all the large oil companies issue credit cards for customer use. Hotels, motels, restaurants, night clubs and many other businesses accept credit cards, operating extensively through this media. As a result, thousands of credit cards have been issued, and untold numbers of charge slips are executed and transported daily. Not only is this an important question so far as the petitioner herein is concerned, but it is also a question of importance to those who facilitate commerce and trade through credit cards and the charge slips arising from their use.

The Court is unable to find that this particular question—interstate transpor-

tation of credit cards and charge slips—has been passed upon by an Appellate Court. Several district courts have considered the matter, and there is no unanimity of opinion.

In United States v. Fred Dwight Jones (No. 29,147–SD), Judge Kunzel of this court instructed the jury that as a matter of law a credit card charge slip is a security within the meaning of § 2314, Title 18 U.S.C.

Judge Marion D. Boyd of the United States District Court for the Western District of Tennessee, Western Division, in U. S. A. v. Verta Green and Anna Grace Miller McCarroll, No. 8858 (November, 1959)—a credit card-charge slip case—instructed a jury as follows:

> "For your information, the Court instructs you the so-called invoices, delivery or charge tickets referred to in the proof, upon which merchandise was allegedly obtained by the defendants on different occasions, are securities within the meaning of the statute on which the indictment herein and each count thereof is based. A security within the meaning of the statute, you understand, may be an instrument or document which gives one the right to demand and receive property not in his possession.

> "To be a security within the purview of the statute in this case, the Court instructs you a so-called invoice, delivery or charge ticket must have been falsely made before and while it is being transported, or caused to be transported, in commerce."

Reporter's Tr., pages 6 and 7.

In the above case the defendants used a stolen credit card to obtain merchandise at numerous filling stations in their travels around the country. The defendants were convicted and sentenced. No appeal has been taken.

Judge Ridge of the Western District of Missouri decided that a credit card charge slip is not a security—United States v. Jones, D.C., 182 F.Supp. 146.

Inasmuch as a Judge of this court has decided a Diners Club Credit Card and charge slip are not securities within the meaning of § 2314, Title 18 U.S.C.A., it would appear (if the case is in point) that we should be bound by Judge Yankwich's decision. He did not write an opinion in the case but gave his ruling orally from the bench, stating in part:

> " * * *, and my view is that this indictment does not state an offense because neither the cards nor the credit slips are securities within the meaning of the section to which I shall refer in a minute, nor are they instruments of a type which the two sections contemplate [§§ 2314 and 2311 of Title 18]."

(Tr. p. 2)

> " * * *, I would hold that a credit card is nothing more than a means which tells the merchant that you will pay for merchandise when a bill is presented. * * *

> "So when Congress used the word 'security' it meant what you commonly call a security, a pledge, a promise, like a promissory note, or the like."

(Tr. pages 4 and 5)

A perusal of the remarks made by Judge Yankwich in the Fordyce case, supra, (No. 29,124) indicates the Court gave most of its consideration to the question of whether a *credit card* was a security. No comment was made by the Court concerning the language contained in § 2311 which defines "securities" as (among other enumerated items) "any * * *, evidence of indebtedness, * * *"

We have no hesitance in agreeing with our Brother Judge that a credit card in and of itself is not a "security" within the meaning of §§ 2311 and 2314, nor is it in and of itself an "evidence of indebtedness" as contained in § 2311. A credit card is nothing more than an indication to sellers of commodities that the person who has received a credit card from the issuer thereof has a satisfactory credit rating and that, if credit is

extended, the issuer of the credit card will pay (or see to it that the seller of the commodity receives payment) for the merchandise delivered. A credit card signifies that the legal owner thereof is a good credit risk and the issuer guarantees payment for goods, wares and merchandise sold and delivered on the basis of the card.

But an entirely different problem is presented when consideration is given to the charge slips. As a general rule, the holder of a credit card presents it to the merchant and, upon the strength of the credit card, a charge slip is made out and signed by the purchaser. The original charge slip is then sent to the proper place for redemption and is paid by the issuer of the credit card. This may be either before or after the holder of the credit card is billed for the merchandise sold to him when he presented his credit card.

In the instant case defendant found a credit card issued to one, Gerald Cohen. As alleged in Count 4 of the Indictment—the count to which defendant entered a plea of guilty—he presented the credit card to a service station operator in Phoenix, Arizona, representing himself to be Gerald Cohen. The service station employee made out the usual credit charge slip, on which he wrote the name "Gerald Cohen" as shown on the credit card exhibited by defendant, the date of the sale, the quantity of merchandise delivered, and the sales price thereof; whereupon defendant signed the name "Gerald Cohen" on the charge slip—a forgery. A carbon copy of the charge slip was delivered to defendant. The original thereof was thereafter transported in interstate commerce from Phoenix, Arizona, to Los Angeles County, California, for payment.

There is no question that defendant, petitioner herein, was in possession of the credit card illegally; and that he used it by forging the name of the true owner thereof to the charge slip which was thereafter transported in interstate commerce. The issue to be determined by the Court is whether such charge slip is a document within the contemplation of "security" as used in §§ 2311 and 2314 of Title 18 U.S.C.

Section 2311 is as follows:

"2311. Definitions

\*   \*   \*   \*   \*   \*

"'Securities' includes any note, stock certificate, bond, debenture, check, draft, warrant, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, *evidence of indebtedness.*\* \* \* \*; instrument or document or writing evidencing ownership of goods, wares, and merchandise, or transferring or assigning any right, title, or interest in or to goods, wares and merchandise; \* \* \* "

After merchandise is sold on the strength of a credit card presentation and a charge slip is prepared by the seller and signed by the credit card holder, and the latter leaves the place of the sale transaction, the only evidence of indebtedness possessed by the seller is the charge slip. He has parted with his merchandise to the credit card holder. In place thereof he has the signed charge slip, *evidencing that the purchaser is indebted* to the seller in the amount shown. The seller expects to be paid for the merchandise sold upon surrender of this evidence of indebtedness. It is, in fact, the only evidence he has to show he has a debt due him and is entitled to payment. To the seller, therefore, the charge slip must certainly be an "evidence of indebtedness."

In light of the foregoing, this Court is inclined to believe that a charge slip issued as a result of presentation of a credit card comes within the purview of § 2314 and is an "evidence of indebtedness" as enumerated in § 2311.

The Motion of petitioner herein to vacate the judgment of conviction upon plea of guilty is denied.

---

\* Emphasis supplied.