**Robert Lee LEWIS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 6867.**

United States Court of Appeals
Tenth Circuit.

March 20, 1962.

James Dyer, Denver, Colo. (Barry D. Mock, Oklahoma City, Okl., was on brief), for appellant.

Leroy V. Amen, Cheyenne, Wyo. (Robert N. Chaffin, Cheyenne, Wyo., on brief), for appellee.

Before MURRAH, Chief Judge, BREITENSTEIN, Circuit Judge, and RICE, District Judge.

MURRAH, Chief Judge.

On this appeal from an order denying appellant's motion to modify sentence, appellant has abandoned all the grounds asserted in the trial court and contends instead that the information under which he was prosecuted does not charge any federal offense. The government concedes that this jurisdictional question is properly before this court. Cf. Robinson v. United States (10 C.A.), 263 F.2d 911; Chappell v. United States (9 C.A.), 270 F.2d 274; United States v. Manuszak (3 C.A.), 234 F.2d 421; and Rules 12(b)(2) and 54(a)(1), Federal Rules of Criminal Procedure, 18 U.S.C.A.

The information charged, in the language of the fourth paragraph of 18 U.S.C.A. § 2314,[1] that appellant unlawfully transported in interstate commerce a tool, implement, and thing used and fitted to be used in falsely making, forging, altering and counterfeiting a security. The information then described the thing unlawfully transported as " * * * a stolen Esso Credit Card * * *, a tool, and thing fabricated from plastic and having raised letters for use in connection with a credit card machine by which an impression is mechanically applied to a form of invoice, an evidence of indebtedness and security * * *." And, our sole inquiry is whether, by any reasonable construction, this language stated a federal offense under § 2314. See Marteney v. United States (10 C.A.), 216 F.2d 760, 762, cert. den. 348 U.S. 953, 75 S.Ct. 442, 99 L.Ed. 745.

It is important to note that while the several provisions of § 2314 condemn the interstate transportation of various things (including stolen property, persons connected with the execution or concealment of fraudulent schemes, and falsely made, forged, altered, or counterfeited securities or tax stamps) we are here concerned only with that portion of the statute dealing with the interstate

[1]. Section 2314 provides, inter alia, that "(W)whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce, any tool, implement, or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security, or tax stamps, or any part thereof * * *" shall be punished in the prescribed manner.

transportation of a tool, implement, or thing which is, or can be, unlawfully utilized in connection with a "security." The gist of the offense charged is the transportation of the tool, implement, or thing—not the transportation of a security.

The information alleged that the credit card transported by appellant was a tool, implement or thing used or fitted to be used in the unlawful manner required by the statute. The capability of the credit card to perform that unlawful function was a matter of proof. But, appellant's plea of guilty admitted all facts well pleaded. See Williams v. United States (10 C.A.), 283 F.2d 59; Adam v. United States (10 C.A.), 274 F.2d 880. And ordinarily, when there is an offense defined by a federal statute, of which the sentencing court has jurisdiction, and the indictment or information apparently attempts to charge that offense, the sufficiency of the charge is not subject to collateral attack by motion under § 2255. See Kreuter v. United States (10 C.A.), 201 F.2d 33, 35; Stegall v. United States (6 C.A.), 259 F.2d 83, 84; Marteney v. United States, supra. Our narrow question is therefore whether the information affirmatively shows on its face that the credit card was not used or fitted to be used to falsely make, alter, forge or counterfeit a security.

The case law on prosecutions under the fourth paragraph of § 2314, and specifically involving the use of credit cards, appears to be limited to four district court cases. In United States v. Jones, W.D.Mo., 182 F.Supp. 146, the charge was the transportation of a falsely made security, to wit: a "credit sales slip." The question presented to the trial court, on stipulated facts, was whether the "sales slips" were securities within the definition provided by § 2311, hence within the ambit of § 2314. Chief Judge Ridge, in a well reasoned opinion, concluded as a matter of law that the "sales slips," bearing imprints of a credit card, were not evidence of indebtedness and hence not "securities."

In United States v. Fordyce, S.D.Cal., 192 F.Supp. 93, the charge was in four counts, the first two of which charged the transportation of credit cards alleged to be tools, implements, or things used in the false making of securities, and the last two counts charged the transportation of "charge slips" apparently produced by the use of the credit cards. In any event, it was admitted that the defendant had used the two credit cards mentioned in the first two counts to obtain the merchandise evidenced by the charge slips which were the subject matter of the other two counts of the indictment. The trial court dismissed the indictment, holding that the "charge slips" were not securities. And, Chief Judge Yankwich was further of the opinion that neither the credit cards, nor the credit cards and charge slips, when used in combination, constituted a "tool, implement, or thing used or fitted to be used in falsely making, forging, altering, * * * any security, or any part thereof."

In Williams v. United States, S.D. Calif., 192 F.Supp. 97, the defendant pleaded guilty to an information alleging the interstate transportation of a falsely made and forged "charge slip." Thereafter, on motion to vacate under § 2255, the trial court considered whether the charge slip was a security within the definition of § 2311. In the face of the view of his brother judge in United States v. Fordyce, supra, Judge Westover held that a "charge slip" issued as a result of the presentation of a credit card was an evidence of indebtedness as enumerated in § 2311 and denied relief. The court reasoned that the merchandise was sold on the strength of the credit card, and the charge slip was signed by the credit card holder, and was the only evidence possessed by the seller, who expected to be paid upon the surrender of the charge slip.

The unreported decision in United States v. Rhea, W.D.Ark., D.C., 199 F. Supp. 301, denied a motion to dismiss an information charging the transportation of a stolen credit card used and in-

tended to be used in the false making of a "credit purchase." The court was of the view that although the credit card was not a security, it was a "thing" used in the false making of credit purchases and of obtaining "evidence of indebtedness."

While these cases may be susceptible of some nice factual distinctions, it seems fair to say that the reasoning equally divides them on the question of whether, in each instance, the product of the credit cards were "evidence of indebtedness" and hence "securities."

At first blush these cases would seem to read on our question and require us to choose between the reasoning and the divergent conclusions reached therein. But, in each of those cases, the trial court had before it a particular charge or credit slip bearing the imprint of a credit card, from which the court decided, as a matter of law, that they were, or were not, evidence of indebtedness. In our case, the critical allegation is that the thing transported was capable of making a "form of invoice" which is an evidence of indebtedness. The product of the thing here transported is not before us and we necessarily deal in labels or nomenclature. In this posture of the case we are required to decide only whether a "form of invoice" is legally incapable of being an evidence of indebtedness, not that in a particular circumstance it is not of such character. An invoice has been authoritatively described as "a mere detailed statement of the nature, quantity, and cost or price of the things invoiced, and * * * as appropriate to a bailment as * * * to a sale." See Dows v. National Exchange Bank, 91 U.S. 618, 630, 23 L.Ed. 214. But we have no authority for saying that an "invoice" could not be cast in a form evidencing indebtedness, and since we cannot say so, this charge is invulnerable on collateral attack.

Affirmed.

BREITENSTEIN, Circuit Judge (dissenting).

The crucial issue is whether the stolen credit card unlawfully transported in interstate commerce was used or fitted to be used in the false making or forging of a security. The information charged that the credit card was used with a machine by which "an impression is mechanically applied to a form of invoice, an evidence of indebtedness and security."

The statute defines security to include evidence of indebtedness,[1] but does not include "invoice" within the definition and does not define evidence of indebtedness. The word "invoice" was used in the information to describe critically the nature of the instrument made by the use of the credit card.[2] The sufficiency of the information depends on whether an invoice is a security.

The guilty plea admits all well pleaded facts.[3] If it affirmatively appears on the face of an indictment or information that no federal offense was committed, the charge is vulnerable to attack under 28 U.S.C. § 2255 because one cannot plead guilty to an offense which is not affirmatively stated in the charge.[4] In at least three prosecutions under the Transportation of Stolen Property Act[5] this court has considered, after a guilty plea, the sufficiency of the indictment or information. In Hawley v. Hunter, 10 Cir., 161 F.2d 825, the charge was transportation of a check-writing machine used to falsify a check. The holding was that the making of a false check was within the statute. In Birtch v. Hunter, 10 Cir., 158 F.2d 134, certiorari denied 331 U.S. 825, 67 S.Ct. 1314, 91 L.Ed. 1841, a profit

1. 18 U.S.C. § 2311.

2. Cf. Marteney v. United States, 10 Cir., 216 F.2d 760, 763.

3. Adam v. United States, 10 Cir., 274 F.2d 880, 882–883.

4. Marteney v. United States, supra, 216 F. 2d p. 762.

5. 18 U.S.C. § 2314 and its predecessor.

sharing agreement was held to be a security within the statute. In Marteney v. United States, supra, the court set aside a judgment entered upon a guilty plea when the charge did not show any false making of a security.

Appellant's guilty plea admitted that the credit card was used to make an invoice, but did not admit the legal conclusion that an invoice is an evidence of indebtedness and therefore a security. The question is not whether an invoice "could be cast in a form evidencing indebtedness" but whether "invoice" as used in the charge is in law an evidence of indebtedness.

Webster's New International Dictionary, 2d Ed. defines "invoice" as:

"A written account, or itemized statement, of merchandise shipped or sent to a purchaser, consignee, factor, etc., with the quantity, value or prices, and charges annexed."

Dows v. National Exchange Bank, 91 U.S. 618, 630, 23 L.Ed. 214, says that an invoice is not a bill of sale or evidence of sale and is "a mere detailed statement of the nature, quantity, and cost or price of the things invoiced." "Invoice" is another term for bill rendered and standing alone it is not a written promise, order, or direction for the payment of money.[6] In Federal Trade Commission v. Mandel Brothers, Inc., 359 U.S. 385, 389, 79 S.Ct. 818, 3 L.Ed.2d 893 the Supreme Court said that "invoice" as used in the Fur Products Labeling Act[7] includes a retail sales slip.

Whether considered as a list of goods sold and the charges therefor, as a bill rendered, or as a sales slip, "invoice" does not imply any acknowledgment of a duty to pay. An evidence of indebtedness may not be created by the unilateral act of a creditor. I agree with United States v. Jones, W.D.Mo., 182 F.Supp. 146, and United States v. Fordyce, S.D. Cal., 192 F.Supp. 93, that a sales slip is neither an evidence of indebtedness nor a security. "Invoice," as used in the information under consideration, does not imply any type of instrument other than a sales slip.

We are concerned with the narrow issues of this case. When sustained by the facts, § 2314 may well be used in credit card cases but there must be some allegation to bring the instrument made by the credit card within the definition of security. I would reverse the judgment and set aside the judgment of conviction.

---

6. Greis v. Fidelity & Casualty Co. of New York, N.D.Okl., 19 F.Supp. 480.

