UNITED STATES of America

v.

Michael Snedeker MINGO.

No. 8097 T. Cr.

United States District Court
M. D. Florida,
Tampa Division.

May 2, 1963.

Edward F. Boardman, U. S. Atty., by Joe H. Mount, Asst. U. S. Atty., Tampa, Fla., for plaintiff.

Harry W. Fogle, of Fogle, Wilson & Shingler, St. Petersburg, Fla., for defendant.

LIEB, District Judge.

In this case the defendant, Michael Snedeker Mingo, was charged in a two count indictment with violation of Section 2314, Title 18, United States Code Annotated. Upon a "not guilty" plea duly entered by the defendant to both counts, the case was called for trial before the Court sitting without a jury pursuant to a written waiver of trial by jury filed by the parties at the opening of the trial. Prior to taking any testimony, the Government announced that it would be unable to produce any proof of the interstate element of the transaction described in count one of the indictment, whereupon the Court granted leave to dismiss said count and said count was dismissed voluntarily by the Government.

Count two, upon which the trial was had, charged that: "On or about April 10, 1962, the defendant did with unlaw-

15. Cf. New York, New Haven & Hartford R. Co. v. Leary, 1 Cir., 204 F.2d 461, 467–468.

ful and fraudulent intent cause to be transported in interstate commerce from Tarpon Springs, Florida, to Philadelphia, Pennsylvania, a falsely made and forged security, to-wit: an evidence of indebtedness showing that merchandise costing $24.67 had been purchased on credit with and by the use of credit card No. R–08661654, issued by Richfield Oil Corporation to C. W. Ireland, and the defendant then and there well knew that said security was falsely made and forged."

From the written stipulation jointly produced by the parties and admitted into evidence, and from additional evidence offered by the Government, the following facts can be taken as established:

The Richfield Oil Corporation issued an annual credit card to one, C. W. Ireland. Said card was marked "Valid through June 1962." The card also recited that it would be honored at stations operated by the Cities Service Oil Company. On April 10, 1962, the defendant, Michael Snedeker Mingo, purchased certain merchandise from a Cities Service gas station located in Tarpon Springs, Florida. Said merchandise consisted of, and was described as, "Delco Parts" priced at $24.67, including tax. The defendant presented the credit card involved in this case to the gas station attendant in lieu of payment for said merchandise, whereupon the gas station attendant prepared, with the use of the credit card, a printed form card entitled "Invoice from your CITIES SERVICE DEALER," reflecting the sale of said products to C. W. Ireland for the price mentioned above. The attendant then handed said invoice to the defendant, who signed the name of C. W. Ireland in the blank space provided on the invoice for the signature of the purchaser, acknowledging receipt and purchase of the merchandise described thereon. Subsequently said invoice was transmitted by the Tarpon Springs, Florida, service station to an office of the Cities Service Oil Company located in Philadelphia, Pennsylvania.

The question presented for the Court's determination is whether or not the invoice involved in this case was, in fact, an evidence of indebtedness and, therefore, a security within the meaning of Section 2314, Title 18, United States Code Annotated, the section under which indictment was brought. The pertinent portion of said section reads as follows:

"Transportation of * * * securities, * * *.

"Whoever, with unlawful or fraudulent intent, transports in interstate * * * commerce any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered, or counterfeited; * * *."

The Court, having reviewed the authorities cited by the parties and the pertinent case law revealed by independent research, is of the opinion that the invoice involved in this case is an evidence of indebtedness and, therefore, a security within the meaning of the statutes involved in this case for reasons hereinafter stated.

Congress has undertaken to define what constitutes a security. Section 2311, Title 18, U.S.C.A., the section setting forth definitions, states, inter alia, that:

" 'Securities' includes any * * * evidence of indebtedness * * * or writing evidencing ownership of goods, wares and merchandise, or transferring or assigning any right, title, or interest in or to goods, wares, and merchandise * * *."

Since it cannot be said that an invoice is legally incapable of being an evidence of indebtedness under any circumstances (see Lewis v. U. S., 10 Cir., 301 F.2d 787,) it is important to examine the true nature of the invoice involved herein. In this connection it is important to consider its commercial function, the underlying credit agreement, express or implied, if any, and the treatment accorded to it by the parties to the transaction. (See Ingling v. U. S., 9 Cir., 303 F.2d 302.)

The invoice involved in this case is entitled "Invoice from your CITIES SERVICE DEALER" and blank spaces are provided thereon to be filled in, upon presentation of the credit card, partially by use of a card machine and partially by the attendant who is conducting the transaction, and the transaction is to be completed by signature of the purchaser. The following items are imprinted by use of a machine:

Credit card number
Customer's name (and address)
Date of card expiration
Dealer's name and address
Date of sale

The dealer then fills in, by hand, the description of the merchandise sold and the price charged therefor. The dealer also inserts, by hand, the state and license number of the car used by the purchaser; and, upon completion, the purchaser signs for the purchase in the blank space provided on the invoice for his signature. At the bottom of the invoice the following legend is printed: "Payable upon receipt of monthly statement." Thereafter, the original or "hard copy" of the invoice is retained by the dealer and the so-called "onion skin copy" of the invoice is given to the customer. The dealer subsequently presents his copy to the oil company for credit or for cash, as the case may be.

The evidence presented indicates that invoices, such as the one involved in this case, were, in fact, customarily offered by dealers and accepted by the gasoline company in payment of gas sold by the oil company and purchased by dealers. The testimony is uncontradicted that the invoices were, in fact, treated as "cash" in inter-oil company transactions. The "hard copy" of invoices presented by the dealer to the oil company for cash or credit were then forwarded to the home office of the oil company, which in turn billed the holder of the credit card for the purchases for that month. The statement sent by the oil company included this "hard copy" of the invoices as supporting evidence of the amount due for the month covered by said statement.

The Court has no hesitation to agree with cases holding that a credit card in and of itself is not an "evidence of indebtedness," and is, therefore, not a security within the meaning of Sections 2311 and 2315. (See United States v. Fordyce, D.C., 192 F.Supp. 93.) It must also be conceded that an invoice ordinarily is not considered to be an "evidence of indebtedness." (See Judge Breitenstein's dissent in Lewis v. U. S., supra, 301 F.2d at page 791.)

The invoice involved in this case, however, falls into an entirely different category. It is evident that by the treatment accorded by the parties to the invoice involved it became an "evidence of indebtedness" in a commercial sense. (See Ingling v. U. S., supra.) The invoice involved here is not a mere statement of account nor a mere record of the transaction which is recited thereon. (Compare United States v. Jones, D.C., 182 F.Supp. 146.) It is an acknowledgment by the holder of the credit card that he is indebted to the oil company for the purchase price of the merchandise stated thereon. (See United States v. Rhea, D.C., 199 F.Supp. 301.) It clearly states that the sum indicated thereon is payable upon receipt of a monthly statement. In fact, the invoice and the onion skin copy are the only evidence that the purchaser is indebted to the oil company for the merchandise evidenced thereon; and the seller of the merchandise expects to be paid for the merchandise sold upon surrender of this "evidence of indebtedness." To the seller, therefore, the invoice must certainly be an "evidence of indebtedness." (See Williams v. U. S., D.C., 192 F.Supp. 97.) If the invoice is an "evidence of indebtedness" when signed by the person to whom the credit card was issued, it is no less an "evidence of indebtedness" when signed by one who is not authorized to do so and who forges the signature of the one to whom the credit card was issued.

The Government has established all the necessary elements of the offense charged in count two of the indictment, to the exclusion of and beyond any rea-

sonable doubt; and the Court, therefore, finds the defendant guilty as charged of the crime set forth in count two of the indictment.