**UNITED STATES of America, Plaintiff,**

v.

**James Lee CROUCH, Defendant.**

**Cr. A. No. 1564.**

United States District Court
D. Delaware.

Dec. 26, 1963.

As Amended Jan. 9, 1964.

Stanley C. Lowicki, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Carroll F. Poole, Wilmington, Del., for defendant.

STEEL, District Judge.

Defendant has moved to dismiss an information which charges in each of two counts that defendant, with unlawful and fraudulent intent, knowingly caused a falsely made "security" to be transported in interstate commerce in violation of the third paragraph of 18 U.S.C. § 2314.[1] The security referred to in each count is a "Credit-Charge Slip" (hereinafter "charge slip") issued by the Atlantic Refining Company. Whether the charge slip is a "security" within the meaning of § 2314 is the question for decision.

The information, twice amended by stipulation, alleges in the first count that the charge slip charged $39.70 for specified merchandise to the account of V. R. Mowry, the owner of credit card #564–847–820, which defendant had stolen, that the charge slip was issued and based upon a contract between V. R. Mowry and the Atlantic Refining Company, the terms and conditions of which were stated on the back of the card as follows:

"CONDITIONS.

"All bills for purchases made with this credit card are due and payable upon presentation. Authorized dealers may make credit deliveries to the holder of this card, * * *."

"By accepting this card the holder named hereon agrees to pay all charges incurred by any person using same until written notice has been received by The Atlantic Refining Company of the loss or theft of the card."

that by the terms of the credit contract and custom and usage in the commercial world of an Atlantic Refining credit card,

1. The third paragraph of § 2314 provides:
"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; * * *

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

the holder of the card is required and agrees to pay for purchases made and charges incurred with the credit card upon submission of a bill for the items purchased. The count further alleges that the defendant used the credit card at a gas station in Newark, Delaware on August 30, 1962, that the attendant made an impression upon a charge slip of the raised numbers from the credit card thus charging the account of V. R. Mowry, that defendant signed the charge slip as Jim Cross the purchaser, knowing it to have been falsely made, and that the attendant gave defendant a copy, and sent the original to Atlantic Refining Company, Credit Card Department, Philadelphia, Pennsylvania, from whence it was sent to Mowry in Petersburg, West Virginia. The first count further alleges that by commercial custom and usage the charge slip is treated not only as evidence of indebtedness but as a writing evidencing ownership of goods purchased and a transfer of a right in goods.

The second count is like the first except that it alleges the purchase of merchandise in the amount of $25.04 on August 31, 1962, and that the charge slip was signed by the defendant as the purchaser in his own name, knowing that the same was falsely made.

Copies of the charge slip and credit card have been made part of each count by stipulation.

█ Defendant attacks the information and argues that the charge slip is not a "security" within the meaning of the third paragraph of § 2314. The Government counters by pointing out that 18 U.S.C. § 2311 defines "securities" for purposes of the National Stolen Property Act which includes § 2314, that the definition includes, among other things, an "evidence of indebtedness" and a "writing evidencing ownership of goods, * * or transferring or assigning any right, title, or interest" in them, and argues that the credit slip falls within either of these two categories.[2]

A resolution of the issue depends upon what Congress meant by the language which it used. Since the same principle is applicable to each count, only the first will be discussed.

The term "evidence of indebtedness" can have various meanings depending upon the context of its use. Here the question is what meaning Congress intended it to have in § 2311 in the context of its interstate transportation. The National Stolen Property Act, of which §§ 2311 and 2314 are parts, does not define an evidence of indebtedness. Nevertheless, guide lines helpful to an ascertainment of its purport are not entirely lacking.

In ordinary parlance, when one speaks of transporting an evidence of indebtedness, reference is made to a written instrument by which one person promises to pay to another a sum of money at a given time. While some of the terms of the instrument may vary, there is no evidence of indebtedness as the term is normally used unless there is a promise by an obligor to pay a sum of money to an obligee.

The charge slip here involved carries the imprint V. R. Mowry after the designation "customer", the name of Jim Cross after the designation "purchaser", the name and address Ralph Wilson,

2. The complete definition of "securities" in § 2311 is as follows:

"'Securities' includes any note, stock certificate, bond, debenture, check, draft, warrant, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate; certificate of interest in property, tangible or intangible; instrument or document or writing evidencing ownership of goods, wares, and merchandise, or transferring or assigning any right, title, or interest in or to goods, wares, and merchandise; or, in general, any instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, warrant, or right to subscribe to or purchase any of the foregoing, or any forged, counterfeited, or spurious representation of any of the foregoing;"

Newark, Delaware, after the designation "dealer", and, in the upper right hand corner, the word Atlantic, without designation. It also contains an itemization of the purchased merchandise with quantities, unit prices and total. The charge slip indicates that Cross was the purchaser of the articles from Wilson, the dealer. The relationship of V. R. Mowry, the customer, to the transaction is not shown. The pertinence of "Atlantic" does not appear. Whether the purchase was for cash or credit is not disclosed. The slip does not indicate to whom payment was made if the transaction was for cash, or to whom the payment is due if the transaction was for credit. If any inference is to be drawn, it would seem that payment was either made or owed to the dealer who sold the merchandise. The information, however, avers that the sale was on credit and that the Atlantic Refining Company is the obligee and Mowry the obligor. The charge slip standing alone is wholly inadequate to substantiate this relationship. Consequently, it is not an evidence of indebtedness, as the term is normally understood.

The Government admits that the charge slip standing alone is inadequate to provide a basis upon which the Atlantic Refining Company could recover the price of the merchandise from Mowry, which is the credit-debtor relationship which the information charges resulted from the transaction. But the Government argues that when the terms of the credit card and custom and usage applicable to its employment are considered in connection with the charge slip, the liability of Mowry to the Atlantic Refining Company is clear. For this reason it is claimed that the charge slip is "evidence of indebtedness" within the meaning of § 2311, and hence a "security" referred to in § 2314.

Of course, any single item of proof which together with other proof will substantiate a monetary claim by a creditor against a debtor, is in a broad sense, "evidence of indebtedness". But it is unlikely that Congress intended the term,

as it was used in § 2311, to have this latitudinous meaning. Each of the other "securities" defined by § 2311 consists of a single document which in itself is sufficient to establish a given right, relationship, or property interest. It is reasonable to conclude that the intended meaning of evidence was similarly circumscribed.

The Government argues that if the charge slip is not an "evidence of indebtedness", it is a "writing evidencing ownership of goods" or "transferring or assigning any right, title, or interest in or to goods." There is a basic difficulty with this contention. The charge slip does not disclose who the owner of the merchandise is nor to whom it has been transferred or assigned. Whether it is the "purchaser", Jim Cross, or the "customer", Mowry, can only be surmised. In this respect it fails to measure up to what is demanded of an instrument evidencing ownership or effecting a transfer or an assignment.

The meaning of "securities" in the first paragraph of § 2314 confirms the view that Congress did not intend "securities" in the third paragraph to include charge slips. The first paragraph of § 2314 makes it a criminal offense for anyone to transport in interstate commerce

> "any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud".

The first pargraph of § 2314 is directed against the interstate transportation of property or securities that have been stolen, converted or taken by fraud. Its purpose was to extend the provisions of the National Motor Vehicle Theft Act to other stolen property. Cong.Rec. p. 6981, 73rd Cong., 2nd Sess. It was meant to protect property or securities of a type which was apt to be stolen or taken by fraud. A charge slip such as is here involved is not property of this kind.

The term "value", as used in the first paragraph of § 2314, is defined by § 2311

to mean "the face, par, or market value." There can be no offense under the first paragraph of § 2314 unless the security involved has either a face, par or market value of $5,000 or more. Obviously the charge slip which is the basis of the present information has neither a par value nor a market value. Nor is the dollar price of the merchandise sold shown on the slip embraced within the usual concept of "face value". Tinder v. U. S., 193 F.2d 720, 722 (4th Cir. 1951), rev. on other grounds, 345 U.S. 565, 73 S.Ct. 911, 97 L.Ed. 1250 (1953), holds that "face value" in 18 U.S.C. § 1708 is employed "to comprehend securities such as promissory notes, bonds or other documents which on their face purport to carry obligations of the stated monetary amount." While "face value" in § 1708 need not necessarily have the same meaning as in § 2311, the meaning accorded it in § 1708 is consistent with the meaning normally given to it, and there is nothing inherent in § 2311 to suggest that a broader meaning was intended.

A charge slip, regardless of the value of the merchandise embraced within it, is a writing incapable of having a "value" (as defined in § 2311), and hence it is not a "security" within the meaning of the first paragraph of § 2314.

Since the charge slip is outside of the intended reach of the first paragraph of § 2314, it cannot be deemed to be within the ambit of the third paragraph of § 2314. It would be unreasonable to construe "securities" in one way for the purposes of the first paragraph, and in

another way for purposes of the third paragraph of the same section, particularly in view of the legislative history of the third paragraph.[3]

The detail in which Congress has defined securities in § 2311 affords ground for the belief that if it had intended the section to encompass a charge slip, invoice, or comparable writing, it would have said so in unmistakable terms. Its failure to do so lends additional support for the view that it did not intend the term "security" to include such a writing.

From the standpoint of precedent, the decisional law is sharply divided. See Lewis v. United States, 301 F.2d 787, 790 (10th Cir. 1962). In denying a charge slip the status of a security under § 2314, it has been said that it is "merely a signed voucher, acknowledging receipt, on purchase, of merchandise", United States v. Fordyce, 192 F.Supp. 93, 96 (S.D.Cal. Cen.Div.1961); that it is nothing more than "evidence of a sale" and reference to the credit card is required to establish liability, United States v. Jones, 182 F. Supp. 146, 149 (Mo.W.D.1960); that a charge voucher stating "address correspondence regarding this charge" to seller lacks the indispensable requirement of a commercial instrument, i. e. a piece of paper having value to the holder and giving assurance to him that the debt it evidences continues to exist, Barack v. United States, 317 F.2d 619, 621 (9th Cir. 1963). In United States v. Young, 210 F.Supp. 640 (Mo.W.D.1962) the Court followed the Fordyce and Jones cases even though the information dis-

3. The definition of "securities" in § 2311 became law in 1934 at the same time that the first paragraph of § 2314 was enacted. May 22, 1934, c. 333; 48 Stat. 794. The third paragraph of § 2314 was not passed until 1939, Aug. 3, 1939, c. 413, 53 Stat. 1178. The meaning which "securities" had when initially enacted in connection with the first paragraph of § 2314 was retained when the third paragraph of § 2314 was passed.

The third paragraph of § 2314 was directed against a forger of a security of the same type that was subject to the theft provisions of the first paragraph.

The failure of the third paragraph to restrict its impact to securities having value of $5,000 or more, as in the case of the first paragraph, is not significant. As originally drafted, the third paragraph contained the same $5,000 limitation as did the first paragraph. H.R. 422, 76th Cong. 1st Sess. This was eliminated from the final version because Congress felt that a forger of a security, however small in value, would probably be a repeater. See Sen.Rept. 674, 76th Cong. 1st Sess. See also H.R. 1996, 76th Cong., 1st Sess., which explains generally the purpose of the third paragraph of § 2314.

closed the manner in which the credit card and sales slips operated.

Other cases have reached a contrary conclusion. In Williams v. United States, 192 F.Supp. 97 (S.D.Cal.Cent.Div.1961) it was said that the original charge slip is the only evidence of indebtedness possessed by the vendor and that he is paid when he surrenders the slip to the issuer of the credit card. In United States v. Rhea, 199 F.Supp. 301 (W.D.Ark. Smith Div. 1961) the view was expressed that the charge slip is evidence in the hands of the credit card issuer of its claim against the credit card holder. United States v. Mingo, 217 F.Supp. 729 (M.D. Fla., Tampa Div. 1963), recognized that ordinarily an invoice is not an evidence of indebtedness, but held that an invoice bearing the legend "Payable upon receipt of monthly statement" constituted an acknowledgement by the credit card holder that he is indebted to the credit card issuer.

In two instances relief against convictions was denied because the charge slips were not before the court. On each occasion the Court recognized that a charge slip might be cast in such form as to constitute an evidence of indebtedness, but held that in the absence of proof by defendant that the charge slip was not an evidence of indebtedness, it could make no such assumption since the attack on the judgment was a collateral one. Ingling v. United States, 303 F.2d 302 (9th Cir. 1962); Lewis v. United States, 301 F.2d 787 (10th Cir. 1962), one Judge dissenting.

The question for decision involves the meaning of a penal statute. An ambiguity in such a statute is not to be solved by interpreting it to embrace an offense not clearly within its terms, Krichman v. United States, 256 U.S. 363, 367–368, 41 S.Ct. 514, 65 L.Ed. 992 (1921). Any doubt concerning its meaning must be resolved against broadening its scope, United States v. Adielizzio, 77 F.2d 841, 844 (2nd Cir. 1935). As indicated, the courts are sharply divided as to the applicability of § 2314 to a charge slip. From the Government's standpoint, the most that can be said is that the meaning of the statute is doubtful. For this reason, in addition to those previously stated, the information must be dismissed.